C. Y. TRYCE *et al.*

*v.*

WILLIAM DITTUS.

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

1. SPECIFIC PERFORMANCE—*what must be shown by complainant.* The complainant in specific performance has the burden of establishing the execution of the contract relied upon, and of showing a full and complete performance, or offer to perform, on his part.

2. SAME—*contract must be complete and fair.* To entitle a party to specific performance the agreement must be fair, certain and complete; and if the language used leaves the intention of the parties in doubt, equity should not decree specific performance.

3. SAME—*contract must be binding upon both parties.* If at the time a contract is executed it is not to be binding upon one party until he has obtained further information, then it is not binding upon the other, and should not be specifically enforced in the ·absence of satisfactory proof that it afterwards became binding.

4. SAME—*when contract as to furnishing abstract is not performed.* If the complainant in specific performance agreed to furnish an abstract of title showing a good and sufficient title, his agreement is not performed by furnishing an abstract showing a defect in title and an encumbrance which the defendant had not assumed, and he is not entitled to a specific performance though he afterward pays off the encumbrance and makes the title good.

APPEAL from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

C. N. SAUM, T. F. DONOVAN, and T. W. SHIELDS, for appellants:

Equity presumes that land possesses a special value that is not, for the purposes of the suit, convertible into any liquidated sum. 22 Am. & Eng. Ency. of Law, 941; *Ensign* v. *Kellogg,* 3 Pick. 5; *Johnson* v. *Dodge,* 17 Ill. 433; *Throckmorton* v. *Davidson,* 68 Iowa, 643; *Popplein* v. *Foley,* 69 Md. 381; *Bogan* v. *Daughdrill,* 51 Ala. 312.

The general rule is, that the granting or denial of a decree for specific performance is a matter resting in the sound discretion of the court. *Fish* v. *Lester,* 69 Ill. 394; *Railroad Co.* v. *Reno,* 113 id. 39.

But while it is discretionary with the chancellor whether he will grant a decree for specific performance, this discretion is not an arbitrary and capricious one, synonymous with the mere pleasure of the judge, but a sound judicial discretion, controlled by the established principles of equity as applicable to the facts in each case. *Broadwell* v. *Broadwell*, 1 Gilm. 599; *Scott* v. *Wilton*, 20 Ill. 310; *Frisby* v. *Ballance*, 2 Gilm. 287; *Hough* v. *Coughlan*, 41 Ill. 134; *Alexander* v. *Hoffman*, 70 id. 119; *Iglehart* v. *Vail*, 73 id. 63; *Cohn* v. *Mitchell*, 115 id. 124; *Race* v. *Weston*, 86 id. 94; *Bowman* v. *Cunningham*, 78 id. 51.

Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach. *Chambers* v. *Iron Co.* 67 Ala. 353; 3 Pomeroy's Eq. sec. 1404; *McClure* v. *Otrich*, 118 Ill. 320.

A contract for the sale of lands will be specifically enforced, and when the parties are in no confidential relation and have equal opportunities for forming a judgment, the contract may be enforced although the result be a loss to one party and a great profit to the other. 2 Beach on Contracts, sec. 884, p. 110, note 3.

W. R. HUNTER, for appellee:

Specific performance is not a matter of right. It must be reasonable and just, and a decree therefor will not be entered unless the agreement has been made with fairness, without misapprehension by one party or misrepresentation on the part of the other. *Taylor* v. *Merrill*, 55 Ill. 52; *Skeen* v. *Patterson*, 180 id. 289; *Hatch* v. *Kizer*, 140 id. 583.

It is only on the principle that it is unjust and inequitable to permit the contract to remain unexecuted that a court of chancery assumes jurisdiction to enforce it. *Hatch* v. *Kizer*, 140 Ill. 583; *Wood* v. *Evans*, 113 id. 186.

It is not essential to establish fraud, imposition or mistake with the same degree of certainty, in order to defeat a claim for specific performance, that is requisite on these grounds to defeat a recovery in an action at law on the instrument, or to authorize a court of equity to cancel the instrument and rescind the contract. *Race* v. *Weston,* 86 Ill. 91.

The burden is on appellants to show full performance on their part. *Dupuy* v. *Williams,* 152 Ill. 102; *Skeen* v. *Patterson,* 180 id. 289.

It is competent for the defendant to set up a parol variation from the written contract, and it will depend upon the particular circumstances of each case whether that will defeat the plaintiff's right to specific performance. *Hall* v. *Hall,* 125 Ill. 95.

Appellants must prove their title to be good. *Thews* v. *Maltby,* 69 Ill. App. 30; *Maltby* v. *Thews,* 171 Ill. 264; *Page* v. *Greeley,* 75 id. 400.

There is no proof in this record of the execution of any deed of conveyance in the chain of title to the Missouri lands shown by the abstract in evidence. The certified copies, together with the certificates of the recorder and Secretary of State, do not prove the execution of the instruments. *Sisk* v. *Woodruff,* 15 Ill. 15.

Mr. Justice Wilkin delivered the opinion of the court:

This is a bill in chancery by the appellants, as partners under the name of "The Missouri Immigration Association," filed in the circuit court of Kankakee county against appellee, to compel the specific performance of a contract for the exchange of lands owned by defendant in Kankakee county for four hundred acres owned by the complainants in Barton county, Missouri.

The bill alleges that on September 6, 1899, the parties entered into a written agreement, which provided that the Missouri Immigration Association agreed to convey to the defendant, by warranty deed, four hundred acres

of land in Missouri for $10,000, said sum to be paid as follows: "To convey to first party, or any party said first party may name, by good and sufficient warranty deed, subject only to balance on mortgage of $200, the following described land in Kankakee county, Illinois; * * * and said second party agrees, as payment of balance of $10,000 purchase money, to assume payment of mortgages or trust deed for $1800 on the north-west quarter of section 16, township 31, range 33, Barton county, Missouri, said mortgages to bear interest at not exceeding six per cent per annum from date; possession of land to be delivered to the respective grantees on or before February 1, 1900; both parties to furnish complete abstract to land to be conveyed by each, which abstract must show good title in grantors; settlement to be made and papers exchanged at the office of Judge Sawyer, of Kankakee, Illinois, on or before October 1, 1899. Said first party agrees to have an open well, not less than two feet in diameter, put down and walled up with stone on said Barton county land at a point convenient to house on land, which shall furnish plenty of water. Second party agrees to connect two strings of tile with the outlet, and to sow in good order about ten acres of rye on Illinois land." It is also alleged in the bill that Beamer, one of the complainants, in pursuance of the contract went to the office of Judge Sawyer, in Kankakee, on the 30th day of September, 1899, (the first of October being Sunday,) and again on Monday, the second, for the purpose of delivering to the defendant a deed and abstract of title to said Missouri land, but that he, the defendant, failed to appear on that date or thereafter, nor did he deliver to Judge Sawyer a deed to his Illinois land or any abstract of title whatever; that on October 2 he (Beamer) went in person to the residence of the defendant and tendered to him the warranty deed and abstract showing good title in him to the Missouri land, and offering to comply with the contract, but that defendant refused to accept the deed

and abstract and refused to comply with the agreement on his part as expressed in the contract; that the abstract tendered him was a good and complete abstract, "showing good title in the said D. A. Beamer, except as to the mortgage for the sum of $1800, which the said William Dittus, by the terms of said contract, agreed to assume." The prayer is for a decree compelling defendant to specifically perform said contract.

The defendant answered, admitting that he had signed the contract set out in the bill, but averring that he was induced to do so through and by the fraudulent representations of the complainant Beamer as to the quality and value of the Missouri land, setting out at great length his version of the history of the transaction. He also alleged that when the contract was signed, the complainant Beamer informed him that if the Missouri land should be sold by his partner to some other person during his absence, the agreement then entered into could not be carried out and would be void, and that he, the defendant, understood and believed, at the time of signing the same, that if the complainant was not bound to carry it out he would not be. Replication to the answer was filed, and on a hearing the circuit court dismissed the bill at complainants' costs. To reverse that decree this appeal is brought.

The complainant D. A. Beamer testified in open court, on behalf of the complainants, to the execution of said agreement and the offer on his part to perform the same, and denied all misrepresentations as to the value and quality of the lands in Missouri. He does, however, testify that after the contract was signed he stated to the defendant that the land there might have been sold during his absence, and that if it was he would not be bound by the contract, and he says, "With that understanding I told him I would telegraph right away and let him know what the facts were along that line." Again he says: "After the contract had been signed it occurred

to me that my partner might have sold the land. I told Dittus this, and if in case he had, would want to cancel the contract with him, and he assented to it. I told him I would go over and telegraph my partner and ask the condition of it at that time, *and telegraph him (Dittus) from Kankakee if the land was sold.* I received a telegram from my partner that the land had not been sold." But he admits that he did not at any time notify the defendant of that fact. The contention of counsel is that he was only to inform Dittus in case the land had been sold; but, as appears from the first quotation, that was not what he promised to do, his statement being that he would inform him of the facts, whether it had been sold or not. The defendant in his own behalf, who also testified in open court that the conversation about the land having been sold and the contract thereby avoided was immediately before it was signed, says: "He drew up a contract and I read it over. After he drew it up he made mention that if the land was sold this contract would be void, and I said, 'All right; I have the same privilege, then,' and he said, 'No; this is binding,' and I said, 'Binding on me but not on you?' 'Yes,' he insisted, 'of course.' I hesitated then to sign the contract. I said I would not sign any such thing, and he said, 'We cannot transfer the land if it should be sold.' Well, then I signed the contract, and told him I signed it with the understanding that I was to find that to be good corn land and everything satisfactory as he represented to me, and he said, 'Of course we would not misrepresent things.'" A. G. Smith, a disinterested witness, in whose store at Union Hill, in Kankakee county, the parties talked over the contract, testified: "I don't remember as to whether there was anything said about Mr. Dittus examining the land to see whether it was as represented or not, but I remember Mr. Dittus was hesitating to sign the contract. I don't remember the exact words that were used at that time, but that was the drift of the conversation. Well,

Mr. Dittus, when he had the pen in his hand, before sit-
ting down and before signing the contract, stated that
he would sign the contract under the conditions that the
land was good corn land, and that he had the privilege
of further examination."

At the time the contract was made (September 6)
there were no mortgages on the complainants' land. The
agreement is indefinite as to when the indebtedness to be
assumed by the defendant should become due. Nothing
is said as to the terms and conditions of the mortgages
or trust deeds. That was undoubtedly one of the things
to be settled in the future. It appears from the evidence
that on the 27th day of September, 1899, Beamer exe-
cuted a trust deed on said quarter section for $1600, to
be paid "five years after date, with interest at the rate of
five per cent per annum, payable annually; privilege to
pay $100, or any multiple, at any interest date;" also a
second trust deed of the same date on the same land, to
secure the payment of $80, payable in five annual install-
ments of $16 each; and a third to secure the payment
of $200, dated September 29, 1889, due on or before five
years after date, with interest at the rate of six per cent
per annum,—in all, $1880. But an attempt is made to
show that the two first trust deeds, one for $1600, with
five per cent interest per annum, payable annually, etc.,
and the other for $80, to be paid in annual installments of
$16 each, are in conformity with the agreement, it being
said that defendant had agreed to "assume mortgages
at six per cent per annum from date." That is not the
language of the contract. He agreed to assume the pay-
ment of mortgages or trust deed for $1800, "to bear in-
terest at *not exceeding* six per cent per annum from date."
He did not agree to assume the payment of a trust deed
with interest at a greater rate than the money could be
borrowed for. The first trust deed shows that the $1600
was loaned at five per cent per annum; then why should
he have been required to pay an additional encumbrance

of $80, to run five years? But the complainants in effect admit that the defendant had not agreed to assume the $80 encumbrance, because they afterwards paid it off themselves, October 14, 1899. It was, however, an encumbrance upon the property on the first of that month, when Beamer claimed to offer to perform the contract on his part.

The abstract of title to the Missouri land offered in evidence, and claimed to have been submitted with the deed to the defendant on October 2, is very lengthy and complicated. It is, perhaps, sufficient to show title in Beamer, but there was at least an apparent interest in one J. M. Dawson and Delia Dawson, his wife, in the west half of section 16, and this was recognized by the complainants afterwards procuring a quit-claim deed from said parties on February 23, 1901, long after the first of October, 1899.

On the third day (September 9) after the contract was signed the defendant notified Beamer that he could not comply with the contract and that he need not go to the trouble or expense of constructing the well mentioned therein. Soon after the agreement the parties met in Gilman, in said county, and had a conversation about the contract, and the defendant there stated that he could not carry it out on account of his children being dissatisfied with the change, (he had at that time no wife living,) especially as his youngest daughter was very much distressed thereby. There was at that time a proposition by Beamer to pay the expense of moving his family and effects, and also some conversation about the defendant going to Missouri to examine the land, which he did, but afterwards repeated his purpose not to carry out the contract.

The evidence is contradictory as to representations alleged to have been made by Beamer of the quality of the soil of the Missouri land and in irreconcilable conflict as to its actual quality and value. We think, how-

ever, that the representations, even as claimed by the defendant, were rather in the nature of expressions of opinion than a statement of facts, and therefore not such legal, fraudulent misrepresentations as would, in law, entitle the defendant to avoid the contract on that ground. It is probably true that the defendant's real motive for refusing to perform the contract was the dissatisfaction of himself and children with the trade.

In a proceeding for specific performance the burden of proof is upon the complainant to establish the execution of the contract relied upon, and to show a full and complete performance, or offer to perform, on his part. The specific performance of a contract is not a matter of right, but will be decreed only where to refuse it would be unjust;—not that the court may arbitrarily refuse to grant the relief, but that it may have regard to the conduct of the parties and to circumstances outside of the contract itself; and the mere fact of the existence of a valid contract is not conclusive in the plaintiff's favor. " 'If the defendant,' said Plummer, V. C., 'can show any circumstance *dehors*, independent of the writing, making it inequitable to interpose for the purpose of a specific performance, a court of equity, having satisfactory information upon that subject, will not interpose.' " (Fry on Specific Performance, p. 10.) In *Bowman* v. *Cunningham*, 78 Ill. 48, it was held "an application for the specific performance of a contract is addressed to the sound, legal discretion of the court, and even where a legal contract is shown to exist it will not be decreed as a matter of course,"—citing *Frisby* v. *Ballance*, 4 Scam. 287, and *De Wolf* v. *Pratt*, 42 Ill. 198. This doctrine has been so often announced by this court that it is scarcely necessary to even revert to it. In order to entitle a party to the specific performance of a contract the agreement must be complete, certain, fair and just in all its parts. (Fry on Specific Performance, p. 155.) The contract must be concluded,—*i. e.*, the persons must have "agreed on the same

terms and mutually signified their assent to them.  If
what passed between them was but treaty or negotiation,
or an expectation of a contract, or an arrangement be-
tween them of an honorary nature, no specific perform-
ance can be had." (Ibid. 131.)  In *Woods* v. *Evans*, 113 Ill.
186, we said, on page 192: "If the language employed
leaves the intention of the parties who executed the con-
tract in doubt, or if there is uncertainty in regard to what
was intended, a court of equity will not undertake to
decree a specific performance.  In speaking upon this
subject, Story (sec. 767) says: 'If they (the contracts) are
not certain in themselves, so as to enable the court to
arrive at the clear result of what all the terms are, they
will not be specifically enforced.  It would be inequitable
to carry a contract into effect where the court is left to
ascertain the intentions of the parties by mere conjecture
or guess, for it might be guilty of decreeing precisely
what the parties never did intend or contemplate.'"

From what we have already said, it appears from the
contract itself that, in so far as the defendant agreed
to assume encumbrances upon the land to be conveyed
to him, the agreement is indefinite and uncertain, and
we think for that reason the court might, in the reason-
able exercise of its discretion, have refused to grant the
prayer of complainants' bill.  The decree below was also
justified upon the ground that the chancellor was au-
thorized by the evidence in finding that the defendant at
least understood the agreement of September 6 as not
final, and that he would not be bound thereby if upon fur-
ther inquiry and examination he desired to withdraw
from it.  It seems clear that upon the understanding of
the parties on that date, until Beamer had telegraphed
to his partner and ascertained that the land had not
been sold, and informed the defendant of that fact, the
agreement was not concluded.  No one will contend that
if Beamer had been informed that a sale had been made,
Dittus could have compelled him to specifically perform

the contract. When it was signed it was not known by either party whether it could be carried out or not, and therefore both parties must have understood that something yet remained to be done in order to make it complete. The right of Beamer to avoid the contract if the land proved to be sold was not a mere privilege to him, but whether the contract should be consummated was made to depend upon that fact. It is said in Beach on Modern Law of Contracts, (vol. 2, sec. 885): "As a general rule, specific performance will not be decreed in any case where mutuality of obligation and remedy does not exist." And in a note to this text it is said: "The general principle is, that where the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other." In *Baird* v. *Linthicum*, 1 Md. Ch. 345, Chancellor Johnson held that "if one of the parties is not bound or is not able to perform his part of the contract he cannot call upon the court to compel specific performance by the opposite party." And in the subsequent case of *Duvall* v. *Myers*, 2 Md. Ch. 401, the same judge said, in substance, that the right to the specific execution of a contract depends upon whether the agreement is obligatory upon both parties, so that upon the application of either against the other the court can compel a specific performance. When the contract here relied upon was signed by the parties, confessedly it was not binding upon the complainants, and was not to be until Beamer had obtained certain further information from his partner and communicated that information to the defendant. Then, clearly, at the very time of its execution it was not to be binding upon either party, and there is no satisfactory proof that it at any time thereafter became so.

But independently of the foregoing constructions, we think the conveyance failed to show an offer upon the part of the complainants to comply with the contract of September 6 according to its terms and conditions, in

that the abstract of title showed an encumbrance of $80 which the defendant did not agree to assume, and also a cloud upon the title to the west half of section 16 in Dawson and wife. Counsel for appellants seem to understand that it was sufficient for the complainants to show, upon the hearing, a good and sufficient title subject to the encumbrances which the defendant assumed and agreed to pay, notwithstanding those defects existed at the time of the alleged offer to perform. It may be that cases can be found going to that extent, but manifestly the doctrine cannot be applied to the facts of this case. Here, by the terms of the contract, the complainants agreed to furnish the defendant a complete abstract of title to their lots, showing good title in them on the first of October, 1899. It cannot be seriously contended that they had the right, under the claim of performance on their part, to prove that they offered a title not perfect, and encumbered by a trust deed which the defendant did not assume to pay, and then be allowed to compel a specific performance of that agreement by afterward proving the title and paying off the encumbrance. If they could do that, they could show a readiness to furnish the abstract showing good title at the hearing, although no attempt whatever had been made on their part to comply with the terms of the contract as to the time when the deed and abstract should be offered. If this were an action sounding in damages for a breach of the contract, it might be said that a part or all of the objections here referred to were waived by the acts and conduct of the defendant, but in this action no such rule can be applied.

Finally, can it be said that the chancellor was not justified, under all the facts and circumstances of this case, in the exercise of a sound legal discretion, in refusing to compel the performance of the contract, though legal upon its face? The defendant promptly notified the complainants that he could not comply with the agreement. There is nothing in the record to show that at

that time they had done anything to place themselves in a worse position than they would have been in had the contract not been made.   Long before the trust deeds were put upon their property they knew that he would not carry out the contract.   On the 9th of September, when the defendant first notified them that he would not perform the contract, they might have brought their action for a breach of the contract, and for anything that appears in this case have been fully compensated for any and all damages sustained.

On a re-examination of the record we are convinced that the decree of the circuit court should be affirmed.

*Decree affirmed.*