BERNARD H. SEITMAN

*v.*

BERNARD SEITMAN.

*Opinion filed October 26, 1903.*

1. CONTRACTS—*a parol contract must be certain to be specifically enforced.* A parol contract will not be specifically enforced by a court of equity unless it is certain and definite in its terms and is established by evidence which is free from doubt.

2. SAME—*what necessary to take case out of Statute of Frauds.* To take a parol agreement relating to land out of the Statute of Frauds upon the ground of part performance, all acts done thereunder must be clear and definite and be referable exclusively to the contract.

*Seitman* v. *Seitman,* 106 Ill. App. 671, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Effingham county; the Hon. WILLIAM M. FARMER, Judge, presiding.

This is a bill for an injunction, filed by the appellant, Bernard H. Seitman, the son and only child of the appellee, Bernard Seitman, in the circuit court of Effingham county, against the appellee, to restrain him from selling or encumbering any part of his real estate, consisting of a farm of 365 acres, in that county.

The bill alleges that in 1876, the complainant having reached his majority the year previous thereto, the father made an agreement with him that if he, with his wife, would remain on the premises and work and assist defendant in the care of the farm without compensation, the latter would not sell, encumber or convey the same away, and complainant should have the real estate as his own, forever; that since the making of the agreement the work and labor of complainant have been done for the purpose of carrying out the agreement on his part in good faith. After praying for an order restraining defendant from conveying any part of the land during his lifetime, the bill asks, in case that relief is denied, that an accounting be taken, under the direction of the court, of the value of the labor performed by complainant and his wife on the premises and of the improvements made thereon, and that a sufficient amount of land be conveyed by the father to complainant to compensate him therefor.

The father answered, admitting that at the time alleged an agreement was made that if complainant would remain with defendant, assist in taking care of the farm and affairs of the household, and work on said farm, the land of which the defendant might be seized at his death should descend to the son, and that as a part of said agreement the son and his wife should live with and care for defendant and wife during their lifetime, there

being no agreement that the defendant should not have the liberty to convey and encumber any portion of the real estate belonging to him; that in pursuance of the agreement set up in the answer, complainant and his wife continued to reside with defendant for two years, until the death of complainant's wife; that thereafter complainant continued to reside there for the period of three years, when he re-married, and he and his second wife continued to live with defendant and labor upon the farm for the further period of nine years, ending in 1890, when he and his wife removed from defendant's home and rented a farm a mile distant therefrom, at which time the agreement theretofore existing was canceled and an equitable division was made between the father and son of all the property accumulated on the farm, complainant taking with him horses and other stock and farming implements, which he accepted in discharge of all obligations of defendant to him, since which time the son continued to work for himself. After answering, defendant also filed a cross-bill, alleging the facts set forth in the answer, and averring that in 1896 he, the father, consented that complainant might build a new house upon a part of the home farm, which the latter still occupies as a residence and which the father prays may be delivered up to him. The cross-bill also pleads the Statute of Limitations. The answer of complainant denied the right to the relief sought by such cross-bill, and as a defense thereto set up the Statute of Frauds.

Upon a hearing in open court the chancellor rendered a decree denying the relief prayed by the original bill, except as to certain improvements, the house, etc., made by the complainant, for which he was allowed $1100 and given a lien upon a part of the lands for the payment of that amount. From a judgment of affirmance in the Appellate Court for the Fourth District this further appeal is prosecuted. Further facts material to the decision of the case are stated in the opinion.

R. C. HARRAR, and BARNEY OVERBECK, (BENSON WOOD, of counsel,) for appellant.

CHARLES H. KELLY, and SYLVESTER F. GILMORE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The agreement alleged in the bill is, that appellant should work on the farm without compensation, assisting appellee to care for the premises, in return for which the land should descend to him. Appellee, in his answer, says that a part of that agreement was that the appellant should care for him and his wife during their lifetime,—quite another and different contract from that set up in the bill, and the only agreement which finds support in the evidence, appellant himself, as well as appellee, testifying thereto. That contract, if it can be called such, is very general and indefinite in its terms. The rule is well settled that a parol contract will not be specifically enforced in a court of equity unless it appears to be certain and definite in its terms and is established by evidence which is free from doubt, and that to take a case out of the Statute of Frauds upon the ground of part performance, all acts done thereunder must be clear and definite and referable exclusively to the contract. *Regan* v. *Regan*, 192 Ill. 589; *Erringdale* v. *Riggs*, 148 id. 403; *Worth* v. *Worth*, 84 id. 442.

The evidence in this record shows that about a year after appellant became of age he married, and he and his wife resided with his parents about two years, until the death of his wife. Within two or three years thereafter the son re-married and brought his second wife to his parents' home, where they resided as one family until 1890, when the appellant, with his second wife, moved to another farm, to which, by consent of his father, he took stock, farming implements and other property, but continued to farm the lands of his father, paying as

rent therefor one-third of the crops, except the hay and pasture land, which he received free of charge. Instead, therefore, of receiving no compensation for his labor, he received two-thirds of the crops, and this clearly indicated an abandonment of the contract relied upon by complainant. In 1896 the appellant obtained permission from his father to erect a house on a portion of the farm about a quarter of a mile from the homestead, which, with other improvements made by him, amounted to about $1200 in value. Upon the completion of the new house the son and his wife took possession of it, and continue to make it their home. In September, 1900, the appellant's mother died. Appellee, the father, being left entirely alone, then requested the son to move into the old home with him, which he refused to do, but desired him to come to the new house and there live with him, offering to give him a room to himself, but the father declined to accept the offer. The evidence fails to show any especial care for the father on the part of the son,— at least no more than a son should render without the hope or expectation of remuneration. Nor has he done anything by way of repairing or caring for the property, especially the homestead, where the father has spent the greater portion of his life and where he desires to end his days. Instead of performing his alleged contract in that regard, it appears from his own testimony that as far back as the time when he and his wife removed to the other farm, the old house where his father lived was "too damp and rotten" to be a safe place in which to dwell. Within the last few years, after the mother's death, upon the father asking the son to come back to the old place, live with and care for him and make necessary repairs upon the house and barn, he refused to do so. The father then has the undoubted right to dispose of a part or all of the land and with the proceeds purchase from strangers the care and attention which the son had agreed to furnish him, but when he threatened

to do so, according to the allegations of the bill, a court of equity is asked to enjoin him.

We are satisfied that in awarding appellant compensation for the house he built upon a part of the land the circuit court dealt liberally with him. It is by no means clear from all the testimony that appellant paid for that house entirely. His own evidence tends to show that a part, at least, of the material was furnished by the father. In short, the alleged contract as to the preservation of the inheritance, relied upon by appellant as a basis for the relief asked in his original bill, is not supported by the evidence, and that contract, as well as the one relating to the care of his parents, as set forth by appellee in his answer, clearly appears to have been abandoned.

We do not wish to be understood as holding that a contract such as the complainant in the original bill attempted to set up,—that is, a contract by a father not to sell, convey or encumber his real estate, but permit the same to descend at his death to a particular person, however definite, specific and certain in its terms,—is such an agreement as a court of equity would enforce. Many reasons will readily occur to the legal mind against compelling a performance of such a contract; but from what we have already said, it is clear that the relief here sought could not be allowed for the reasons stated. To say the least, appellant has no cause, legally or equitably, to complain of the decree below.

In so far as the original bill prays an accounting, we think the decree of the circuit court remitting the complainant to his remedy at law, without prejudice, is as favorable to him as he has any right, upon the evidence in this record, to ask or expect.

The judgment of the Appellate Court sustaining the decree of the circuit court will be affirmed.

*Judgment affirmed.*