GEORGE B. RANSON *et al.* Appellants, *vs.* JOHN RANSON *et al.* Appellees.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

1. SPECIFIC PERFORMANCE—*clear proof is required where an alleged contract to convey is oral.* Specific performance of an alleged oral contract to convey land cannot be decreed, as against a plea of the Statute of Frauds, unless the proof is clear and definite that possession was taken under the agreement relied upon and in part performance thereof, and that the improvements were made under the contract itself, and not otherwise.

2. SAME—*what proof does not justify a decree of specific performance.* Proof of declarations by a father to third persons of an intention to convey or devise to his son property which the latter was occupying, coupled with proof that the father knew the son was expending considerable money in improvements, does not, of itself, justify a decree of specific performance against a plea of the Statute of Frauds interposed by the executors of the father's will, which makes another and different disposition of the land.

3. SAME—*complainant may be entitled to re-imbursement for improvements though contract cannot be enforced.* Under an alternative prayer for relief in a bill for specific performance of an alleged oral contract to convey, the complainant may be allowed the value of permanent improvements placed by him upon the land, in the expectation that it would be his, and which have enhanced the value of the land.

4. SAME—*payment for services in clearing land cannot be recovered as constituting a permanent improvement.* Under an alternative prayer for relief in a bill for specific performance of an alleged oral contract to convey land the complainant cannot recover payment for services in clearing and breaking new ground, since the claim for such services, if any accrues, is a legal one, which must be enforced by the complainant in a court of law, the same as claims of other general creditors of the deceased promisor.

5. SAME—*when liability for rent will not be considered in taking an accounting.* In taking an accounting to determine the value of improvements placed upon land by a son in the expectation that his father would give him the land, any liability for rent for the years the son has occupied the land cannot be considered, where the father by his will gave to the son all notes, *accounts* and evidences of indebtedness which he held against the son.

6. SAME—*amount due for improvements may be made a lien upon land.* Where a son who has made valuable improvements upon

233 — 24

land elects to come into a court of equity after the father's death to compel specific performance of the latter's alleged oral contract to convey, or, in the alternative, to be re-imbursed for the value of permanent improvements, whatever amount is found to be due the son for such improvements should be made a lien upon the land.

APPEAL from the Circuit Court of Morgan county; the Hon. R. B. SHIRLEY, Judge, presiding.

The bill in this case was filed by appellants against the heirs and executors of James Ranson, deceased, for the specific performance of an alleged oral agreement made by James Ranson, in his lifetime, to convey to the appellant George B. Ranson, his son, one hundred and sixty acres of land described in the bill. George B. Ranson entered into possession of the south half of the south-east quarter of section 4, town 18, north, range 11, west, more than thirty years before the death of his father, which occurred in August, 1902. A few years after taking possession of the eighty-acre tract he also took possession of two forty-acre tracts described in the bill, and from the time of taking possession of these lands continuously remained in possession thereof until his father's death. One of said forty-acre tracts was in the same section and adjoined the eighty-acre tract above described. The other forty was in section 16. The residence of George B. Ranson was on the eighty-acre tract. When he took possession of these lands they were poorly improved, and the forty-acre tract in section 16 was timber or brush land and had not been cleared. The bill alleges, and the proofs show, that prior to the death of his father George B. Ranson expended several thousand dollars in the erection of buildings and making improvements of a permanent character upon the land whereon he resided. The bill alleges that James Ranson entered into an agreement with his son George that if he would enter upon the one hundred and twenty acres in section 4 and improve and occupy said land during his natural life, at the death of his

father the lands should be his, and that his father also agreed with him if he would clear, fence and improve the forty acres in section 16, that tract also should be his at his father's death. The bill further alleges that in pursuance of these agreements the said George B. Ranson entered upon the premises and made improvements upon the land in section 4 to the value of $10,000, and that he cleared up, fenced and improved the land in section 16. No conveyance was made by James Ranson of said lands during his lifetime, and by his will he devised the eighty-acre tract above described to his executors, as trustees, with directions to lease and rent the same during the lifetime of George B. Ranson, and after paying the taxes and costs of repairs and improvements out of said rents, to pay the balance to said George B. Ranson, and upon his death said trustees were directed to sell said land and divide the proceeds of the sale among the children of said George B. Ranson. By another clause of the will George B. Ranson was given all notes, accounts and other evidences of indebtedness his father held against him. The other lands described in the bill constituted a part of the residuary estate of James Ranson, and by his will his executors were authorized to sell and dispose of them. We do not find the entire will in the record, but as we understand the briefs of counsel, no other provision was made by the will for George B. Ranson except as stated in the two clauses above referred to. The bill prays a decree for the conveyance of the one hundred and sixty acres to George B. Ranson; also, that in the event of it being held that he is not entitled to such conveyance under the proofs, he be decreed to be paid the value of the improvements he had placed upon the land, with six per cent interest thereon from the time the same were made.

The answer of the executors and trustees under the will denied the material allegations of the bill, and averred that if George B. Ranson had any claim for improvements made on the premises his remedy was at law, and that he was

barred by *laches* in not filing said claim against the estate of the testator. The answer also set up and relied on the Statute of Frauds. The executors also filed a cross-bill, praying that they be decreed possession of the eighty-acre tract in section 4 as trustees and the other two forties as executors. The cause was referred to the master in chancery, who heard the proof and filed a report recommending that the original bill be dismissed for want of equity and that a decree be entered granting the complainants in the cross-bill the relief therein prayed. Exceptions to the master's report were overruled by the court and a decree entered in conformity with the master's report. To reverse that decree this appeal is prosecuted.

R. W. MILLS, for appellants.

LAYMAN & MORRISEY, and KIRBY & WILSON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The contract declared on in the bill being oral, it was void under the Statute of Frauds unless there was such part performance of it as to take it out of the operation of said statute. To effect this result the proof must be clear and definite that the possession was taken under the agreement relied upon and in part performance of it, and that the improvements were made under the contract itself, and not otherwise. This is the rule uniformly adhered to in this State. (*Wood* v. *Thornly,* 58 Ill. 464; *Padfield* v. *Padfield,* 92 id. 198; *Pickerell* v. *Morss,* 97 id. 220; *Clark* v. *Clark,* 122 id. 388; *Shovers* v. *Warrick,* 152 id. 355; *Geer* v. *Goudy,* 174 id. 514.) The proof relied on in this case consists of statements made by James Ranson, in his lifetime, to third parties, of an intention to convey or devise the lands to his son George, and also proof that he knew his son was expending considerable money in making im-

provements on the land. There is no clear and definite proof to support the allegations of the bill that George B. Ranson took possession of the land in pursuance of an agreement that it was to be conveyed to him and that the improvements were made on account of such agreement. He was undoubtedly warranted in believing, from statements made by his father after he had taken possession of the land, that when his father died, if not before, it would become his.

*Geer* v. *Goudy, supra,* was a bill to enforce specific performance of an oral promise by the father to convey land to his son, and in the opinion will be found a discussion of the character of proof required in such cases where the relation of parent and child exists. It was there said (p. 522): "All the authorities agree that such a promise must be established by proof which is clear, definite and unequivocal. Mere declarations made by the promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony. * * * The fact that a father puts his son in possession of land with the expectation of giving it to him some day is not conclusive evidence of a gift of the land." The court also quoted with approval from *Harrison* v. *Harrison,* 36 W. Va. 556: "Neither are loose declarations of the father calling the land the son's property, without explanation, sufficient evidence of a gift. A contract between father and child, from the nature of the relation, requires to be proved by a kind of evidence very different from that which might be sufficient between strangers. The evidence, in such case, of a parol gift from father to child should be direct, positive, express and unambiguous and its terms clearly defined."

In *Cox* v. *Cox,* 26 Pa. St. 375, (67 Am. Dec. 432,) it was said: "When a father puts his son on a farm with the expectation of giving it to him some day, the son is not like to an ordinary tenant at will, for his relationship to the owner places him in a higher position, not as to the legal

title, but as to his hopes, and consequently as to his inducements to improve. We naturally expect him to deal with the place very differently from what a stranger would do. He improves it because he expects that the justice of his father will give him the benefit of his improvements, and in making them he is almost always aided by his father and the rest of the family, without any accounts being kept; and this shows very clearly their family character, and excludes them from the supervision of the law. In the very nature of these family transactions such improvements are not evidence of a gift of the land, and no matter how unjustly a father may seem afterward to have acted to his son or how unfortunate it may be for him that his father died without carrying out his intentions, we cannot correct the mischief by giving the son the land."

In *Clark* v. *Clark, supra,* it was said: "A court of equity will not execute the expressed 'intention and expectation' of a father to give his son a farm unless such 'intention and expectation' have ripened into and become embodied in a definite agreement."

The chancellor correctly held that the proof did not make a case entitling appellant to a decree for the conveyance to him of the land, but we are of opinion he was entitled to some relief, under the alternative prayer, for the value of permanent improvements made by him prior to his father's death.

*Worth* v. *Worth,* 84 Ill. 442, was a bill by the widow and heir, against the father of the deceased husband and father, for specific performance of an oral contract to convey land to his son. Several years before his death the son took possession of the land, fenced, broke it out and cultivated it until his death. He placed improvements upon it of the value of $2500 to $3000. The proof made as to the agreement of the father to convey his son the land was similar to that made in this case, and it was held insufficient to support a decree for specific performance, but it was also

held the widow and heir were entitled to the value of the improvements, with interest thereon at six per cent from the time of making them, deducting therefrom the rents received by the son while living.

In *Seitman* v. *Seitman,* 204 Ill. 504, a son was allowed the value of a house built by him upon his father's land under an alleged oral agreement with the father that if the son would remain on the farm and perform certain work and services without compensation the father would not sell or encumber his land but would leave it to his son.

In *Smith* v. *Admrs. of Smith,* 4 Dutch. 208, (78 Am. Dec. 49,) it was held that where a son erected buildings on land, with the knowledge and consent of his father, under a promise from the father that the farm should be the son's at his death, and the father died without conveying or devising the land to the son, the son was entitled to the value of the improvements made by him upon the land.

In *Rucker* v. *Abell,* 8 B. Mon. 566, (48 Am. Dec. 406,) it was said: "But as the son had taken possession of the land under the verbal gift and made valuable improvements thereon under the expectation created by the act of the father that the gift would be consummated, he is in equity entitled to pay for those improvements and has a lien upon the land to secure the payment of their value. This lien would exist against the donor and is valid against creditors. But its amount must be determined by deducting from the value of the improvements a reasonable compensation for the use of the land."

*King's Heirs* v. *Thompson,* 9 Pet. 204, was a bill by a daughter of George King, deceased, married to a man named Thompson, and her husband, against the heirs of George King, for the specific performance of an oral agreement to convey to his daughter, Mrs. Thompson, certain real estate. The bill alleged the house on the premises, which was a lot in Georgetown, was in bad repair and almost untenantable, and that King agreed to give it to com-

plainants in the bill if they would repair and make the house a comfortable residence; that they accepted the property, and the husband, Thompson, expended more than $4000 in repairs and improvements on the house and lot. King never conveyed to complainants the lot and afterwards died intestate. The Supreme Court of the United States held the proof insufficient to warrant specific performance of an agreement to convey land but that Thompson was entitled to remuneration for the value of the improvements he had placed upon the lot, and said: "If the money has been judiciously expended, under such circumstances as to entitle the complainant to a lien, the court must give effect to it. It is an equitable mortgage, and in a court of chancery is as binding on the parties as if a mortgage in form had been duly executed." The heirs of King contended Thompson ought not to be given a lien against the land for the payment of the claim but that he occupied the same position as any other creditor of the estate having unsecured claims, and should receive payment in the same manner they were required to be paid, but the court held against this contention, and held that he was entitled to have the amount due him made a lien against the premises. As the circuit court had decreed a conveyance of the property its decree was reversed and the cause remanded, with directions to that court to enter a decree for the sale of the property, and that out of the proceeds there first be paid to the complainant the money expended in improving the property, and the balance, if any remained, be paid over for the benefit of the creditors of the estate of George King. Afterwards such proceedings were had in the lower court that the property was sold, and after applying the proceeds of the sale upon the payment of the amount found due Thompson, there was left more than $3000 of said claim unsatisfied. Subsequently Thompson died, and his administrator presented this balance as a debt due from the estate of King, and this was allowed, and an order entered that Thomp-

son's administrator should come in for an equal dividend with the general creditors of King's estate. From this order an appeal was again prosecuted to the Supreme Court of the United States, (*King* v. *Thompson,* 13 Pet. 128,) and it was there held the order of the lower court was erroneous; that as Thompson by his bill sought to charge the property with the value of the improvements made thereon instead of coming in as a general creditor, his claim could only be satisfied out of the property.

We are of opinion George B. Ranson is entitled to compensation for the value of the improvements put upon the land by him prior to his father's death, which were of a permanent character and enhanced the value of the land. This, however, would not include payment for his services in clearing land and breaking out new ground, although such services undoubtedly increased the value of the premises. If any claim accrued by reason of services of that character it would be a liability against James Ranson which could not be enforced as a lien against the land, but the remedy for its collection would be at law, the same as that of other general creditors of the estate. Equity, in such cases, will only charge the land with the value of improvements of a permanent character which are placed upon and become a part of the real estate. While it appears from the evidence that George B. Ranson was some years charged for the rent of the premises and gave his notes therefor, it is impossible to determine from this record how many and what years he was charged by his father with the rents, and how much, if anything, he ever paid therefor. This, however, is not material. By the will of James Ranson he gave his son George all notes, accounts and evidences of indebtedness he held against him. This would discharge George from any liability, in taking the account, to be charged with two notes his father held against him for rent or for any other indebtedness on account of rent for the premises, if there be any such unpaid indebtedness.

We are of opinion appellant George B. Ranson should have been allowed the value of the improvements of a permanent character made upon the land by him, with five per cent interest thereon from the time of making the said improvements, and as he has elected to come into a court of equity to enforce the payment of this claim instead of proceeding against the estate of his father as a general creditor, whatever amount is found due him upon the taking of the account should be made a lien against the land whereon the improvements were placed, and said lands, or so much thereof as may be necessary, directed to be sold for the payment of the same.

The decree of the circuit court will be reversed and the cause remanded for further proceedings and the taking of the account in accordance with the views herein expressed.

*Reversed and remanded.*