WALTER B. BOWER, Appellant, *vs*. MARGARET A. LIVINGS-
TON *et al*. Appellees.

*Opinion filed October 25, 1911.*

1. SPECIFIC PERFORMANCE—*when specific performance of an al-
leged oral contract to convey is properly denied*. Specific perform-
ance of an alleged contract to give eighty acres of land to the
complainant at the promisor's death is properly denied in a suit
brought after the promisor's death, where the evidence leaves it
in doubt whether the promisor intended that the land should be-
long to complainant or that he should merely occupy it as a tenant,
the agreement being that he should pay the taxes, keep up the im-
provements and pay $328 annually to the promisor.

2. APPEALS AND ERRORS—*when assignment of cross-errors will
be treated as waived*. An assignment of cross-errors on the allow-
ance of a certain sum to the complainant for improvements placed
upon the premises in the belief that the land would by some means
be his, will be treated as waived on appeal from a decree denying
specific performance of an alleged oral contract to give the land
to complainant at the promisor's death, where no attempt is made
in the brief to show wherein the decree is wrong in that respect.

APPEAL from the Circuit Court of Livingston county;
the Hon. G. W. PATTON, Judge, presiding.

Z. F. YOST, for appellant.

R. R. WALLACE, H. G. GREENEBAUM, J. A. BROWN,
A. C. NORTON, and F. A. ORTMAN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant filed his bill in the circuit court of Livingston
county against appellees for the specific performance of an
alleged contract made with him by Abraham Livingston, in
his lifetime, for the sale of an eighty-acre tract of land in
said Livingston county. About 1868, when appellant was
fifteen years old, his parents died and he went to live in
the family of Abraham Livingston. Livingston had no
children of his own. Appellant lived there until he was

twenty-one years of age and then went to Kansas, married, and lived in that State with his family until 1901, when he and his family moved back to Livingston county. The bill alleges that in February, 1901, Livingston made a contract with appellant by which it was mutually agreed that if appellant would move upon and take possession of the eighty acres of land described in the bill and continue to reside thereon with his family for a home, keep up the improvements, pay the taxes assessed against the land during the remainder of Livingston's lifetime and pay him the sum of $328 annually, (that sum being equal to five percent interest per annum on the amount of money paid for the land by Livingston,) at the death of said Livingston said land was to be the sole property of appellant, the same as if conveyed to him by Livingston, during his lifetime, by warranty deed for the consideration of $82 per acre, and that by virtue of this agreement the land became the property of appellant. The bill alleges that appellant performed all the conditions upon his part agreed to be kept and performed; that Livingston died intestate, leaving his widow and collateral relatives as heirs, and that he had never made any conveyance of the land to appellant. The bill prayed for the specific performance of the alleged contract and agreement. The material allegations of the bill were denied by the answers of the defendants and the Statute of Frauds was set up and relied upon. Replications were filed, and the cause was referred to the master in chancery to take proof and report the same, together with his conclusions thereon, to the court. After taking the testimony of the respective parties the master reported that the evidence failed to prove Abraham Livingston entered into any agreement or contract, written or verbal, with appellant to convey to him by deed or devise to him by will the said tract of land; that the equities in the cause were with defendants, and he recommended that the bill be dismissed. Objections to the report were overruled by the master and re-

newed as exceptions before the chancellor. The chancellor overruled the exceptions and entered a decree that upon the question of specific performance of the alleged contract the equities were with defendants and the specific relief prayed for was denied. The decree further found that appellant had made improvements to the value of $1090 upon the premises "under a belief that the farm would be his by some means and that he should be paid for the same." The decree ordered defendants to pay appellant the said sum of $1090 for improvements made by him on the premises, with five per cent interest per annum from the date of the decree, and that appellant have a lien on the premises therefor. The costs were adjudged against defendants below, appellees here. Complainant below has brought the case to this court by appeal.

Statements made by Abraham Livingston at the time he bought the eighty acres of land, and afterwards, tend to show he bought it with the intention of having appellant live upon it, but appellant's proof is not altogether clear as to the capacity in which he was to occupy it. Some of the testimony of appellant as to statements made by Abraham Livingston tends to show the agreement was that appellant was to move on the land, pay Livingston five per cent interest on the amount the land cost him, as long as he lived, also pay all taxes and keep up the improvements, and the land should be his at the death of Livingston. Appellant went to Kansas in 1874, married, and lived there until the latter part of February, 1901. Livingston bought the eighty-acre tract of land in May, 1900. A letter claimed to have been written to appellant by Livingston after he bought the land is said to have been lost. A daughter of appellant, who was about fourteen years old when the letter is said to have been received, testified she read it, and that Livingston stated in the letter, in substance, that he had bought a farm for appellant and would like to have him come that year; that if he could not come then, to

come the next year; that all Livingston would ask of him was to keep up the interest on the money, pay the taxes, and when Livingston was through with it it was to be appellant's. When appellant came back to Illinois, in February, 1901, he brought his effects with him. His son John and a nephew named Manley came with him and all three went to the home of Livingston the night they arrived. John testified Livingston told appellant he bought the farm for him and was glad he had come; that he did not know whether appellant could get possession at once, as it was occupied; that the next morning after their arrival Livingston told appellant he was to have the place for five per cent interest on $82 per acre, keep up the improvements and pay the taxes, and when he (Livingston) was through with it it was supposed to be appellant's; that appellant replied that was all right and he would do the best he could with it; that it looked like big money on a small place. Manley testified to the same conversation, in substance. A large number of other witnesses testified to statements made by Livingston, some tending in a greater and some in a lesser degree to indicate that Livingston intended the land for appellant, but a good deal of the testimony leaves it very uncertain whether there had been a contract of sale of the land to appellant for a consideration of $328 per year, the payment of all taxes and the keeping up of the improvements during the lifetime of Livingston, or whether Livingston intended for appellant to have and live upon the land during his (Livingston's) lifetime upon the condition of his paying $328 per year and taxes and keeping up the improvements for the use of the land. Some of the evidence tends to show that Livingston intended appellant to have the land after his death, but, taking appellant's evidence alone, it may well be doubted whether Livingston intended or believed he had, by virtue of any agreement with appellant, given him any interest in or right to the land during his (Livingston's) lifetime, further than to live on

and occupy it upon condition that he make the payments specified. On the other hand, a large number of witnesses testified to statements and acts of Livingston, appellant, and members of appellant's family, wholly inconsistent with any contract of sale of the land to the appellant but tending strongly to show that appellant occupied the land only as a tenant.

We do not think it would add to the weight or value of this opinion to attempt to set out all the evidence of the respective parties in substance, and will not do so. Conceding that appellant introduced evidence tending to show a sale of the land to him, and that by virtue thereof he entered into possession, paid all taxes, made lasting and valuable improvements and paid the cash consideration of $328 per year until Livingston's death, this was directly contradicted,—at least so far as any contract of sale is concerned,—by an abundance of testimony introduced by the defendants. To our minds it is perfectly clear that under the evidence in this case a decree for specific performance is not authorized. The rule in cases like this has been the subject of discussion in many cases decided by this court. A number of said cases, as well as decisions of courts of other States, will be found cited and commented upon in *Ranson* v. *Ranson,* 233 Ill. 369.

As to the character and value of the improvements put upon the premises by appellant the evidence was not harmonious. It is not denied that Livingston, in his lifetime, paid for some improvements, but the appellant's evidence tended to show he had paid for improvements of a permanent character of the value of from $1000 to $1500. The chancellor found the value of the improvements put upon the premises by appellant to be $1090; that they were put there by appellant under the belief that the land would by some means be his, and the decree directed the payment to him of said sum of $1090 and made it a lien on the premises. Appellees have assigned cross-errors upon this

part of the decree. They content themselves with the assertion that the decree in this respect is wrong, but have not given any reasons for the assertion or attempted to argue the cross-errors in their brief. The assignment of cross-errors will therefore be considered as waived. *Lingle* v. *West Chicago Park Comrs.* 222 Ill. 384; *Banfill* v. *Twyman,* 172 id. 123; *Johnson* v. *Farrell,* 215 id. 542.

The decree of the circuit court is affirmed.

*Decree affirmed.*