EDWARD BLAISE *et al.*, Plaintiffs-Appellees, *v.* OTTO STEIN *et al.*, Defendants-Appellants.

Fifth District   No. 78-366

Opinion filed August 31, 1979.

James R. Keller, of Murphysboro, for appellants.

John C. Ryan, of Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants Otto Stein and Julia Blaise Stein appeal from a judgment of the circuit court of Jackson County granting plaintiffs specific performance of an oral contract to convey real property.

The series of events culminating in this action began on June 12, 1893, when Celestine Marie Blaise conveyed an 80-acre tract of land known as Section 31 to her daughter, Mary Celine Blaise. Under the conveyance, Mary Celine received a life estate in Section 31, and the remainder was to vest in her surviving children upon her death.

Mary Celine was married to Ferdinand Blaise. Ferdinand owned a section 80-acre tract known as Section 30, where he and his family made their home. Section 30 touched Section 31 at one of its corners.

Mary Celine and Ferdinand had two children, Julia and Edward. It is conceded by all of the parties that prior to 1938, it was generally understood and agreed within the family that after the death of both Ferdinand and Mary Celine, Julia was to receive all of Section 30 and Edward was to receive all of Section 31.

On January 31, 1937, Ferdinand died intestate. Mary Celine, Edward and Julia each received a one-third interest in Section 30 under the intestate succession statute then in effect. Julia and her husband, Otto Stein, testified that in 1938, Mary Celine, Edward, Julia, and Otto went to see an attorney with the intention of arranging the previously described division of property between Edward and Julia. During the ensuing discussion, a disagreement arose between Edward and Mary Celine over precisely what interest Edward should receive. Mary Celine chose to retain a life interest in her share, and Edward found this objectionable. Edward refused to convey his interest in Section 30 to Julia. Edward denied that such a meeting transpired, or that any of the events described ever occurred.

On August 28, 1939, Edward conveyed his interest in Section 30 to his second wife, Bessie. Mary Celine conveyed her interest in Section 30 to Julia on September 11, 1939. Bessie and Edward conveyed Bessie's interest in Section 30 to Julia on June 19, 1940.

The consideration for the June 19, 1940, conveyance is disputed by the parties. Edward testified that the conveyance constituted his consideration for Julia's conveying her interest in Section 31 to Edward. Julia and Otto contended that they had paid or cancelled three debts owed by Edward as payment for Bessie's interest in Section 30. Otto produced three cancelled checks, totalling $415, with which he claimed to have paid the debts. Evidence of a chattel mortgage and a judgment against Edward was admitted by the trial court. The deed recited a consideration in the amount of $415, an amount equal to the sum of amounts of the three cancelled checks. The parties agree that an attorney representing Otto and Julia prepared the deed. Edward denied owing any of the three debts in question, and further denied that Otto paid them on his behalf as consideration for the conveyance of Bessie's interest in Section 30.

On May 18, 1950, Mary Celine died. The parties agree that upon her death, Edward and Julia each received a one-half interest in Section 31. From 1950 until 1976, Julia neither paid taxes or insurance on nor collected rents or profits from Section 31. Edward lived on the section and made all decisions regarding its use and management.

In March of 1976, Edward entered into a contract to sell certain standing timber from Section 31. Julia was not a party to the contract, and was not consulted prior to its execution. Shortly thereafter, Otto asserted Julia's ownership interest in Section 31 to the tenant who had been renting the property, and offered to sell the property to the tenant for $40,000. The offer was presented to Edward, who agreed to the purchase price, and stated that if Julia would take $20,000 for her interest, he was willing to take $20,000 for his. Edward accepted and cashed a $500 earnest deposit from the tenant.

The sale was not completed, and the already strained relations between Julia and Edward apparently deteriorated rapidly, culminating in Otto's threat to evict Edward from Section 31. Edward then conveyed his interest in Section 31 to his five children.

On December 31, 1976, Edward and his children, hereinafter "plaintiffs," commenced this action, seeking specific performance of the alleged oral agreement that Julia would convey her interest in Section 31 to Edward in exchange for Edward's conveyance of his interest in Section 30 to Julia. On January 13, 1977, Julia and Otto, hereinafter "defendants" answered the complaint, denying the agreement and alleging that they had paid Bessie for her interest in Section 30. They further

counterclaimed for rents, profits and damages. Plaintiffs filed their reply to the affirmative defense and counterclaims on January 26, 1977. On April 25, 1977, defendants filed a motion to amend their pleadings by adding the affirmative defense that the alleged agreement was unenforceable under the statute of frauds. (Ill. Rev. Stat. 1975, ch. 59, par. 2.) The trial court granted the motion, which was originally made orally in open court without any objection from plaintiffs.

After hearing the evidence, the trial court entered an order dated June 20, 1977, requiring defendants to execute a quitclaim deed to. the plaintiffs for all of defendants' interest in Section 31. No specific findings of fact were made except that the action was not barred by the Statute of Frauds and that defendants failed to make the requisite proof on their affirmative defenses and counterclaims.

Defendants appeal, asserting that (1) no enforceable oral contract existed between Edward and Julia, and (2) even if there was an enforceable contract prior to 1938, Edward abandoned it by refusing to convey his interest in Section 30 to Julia, and by subsequently disabling himself from giving the agreed-upon consideration when he transferred his entire interest in the property to his wife. We are somewhat hindered in our review of this case by the absence of specific findings of facts from the trial court. However, even indulging every possible presumption in favor of the trial. court's result, we hold that the judgment must be reversed.

■■ Specific performance is not a matter of right; it is a remedy resting in the sound discretion of the court. (*Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106; *Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 130 N.E.2d 753; *Tryce v. Dittus* (1902), 199 Ill. 189, 65 N.E. 220.) Before a court may exercise that discretion in favor of granting the remedy in the case of an oral contract which would normally be unenforceable under the Statute of Frauds, the court must find that the terms of the contract are clear, definite, and unequivocal (*Pope v. Speiser* (1955), 7 Ill. 2d 231, 130 N.E.2d 507; *Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 130 N.E.2d 753; *Shaver v. Wickwire* (1929), 335 Ill. 46, 166 N.E. 458; *Lonergan v. Daily* (1914), 266 Ill. 189, 107 N.E. 460; *Seitman v. Seitman* (1903), 204 Ill. 504, 68 N.E. 461; *Tryce v. Dittus*; *Langston v. Bates* (1877), 84 Ill. 524), that the contract has been at least partially performed by the party seeking the remedy (*Pocius v. Fleck*; *Ropacki v. Ropacki* (1933), 354 Ill. 502, 188 N.E. 400), and that the acts allegedly done in performance are positively attributable exclusively to the contract (*Lonergan v. Daily*; *Seitman v. Seitman*; *Drobnick v. Rollery* (1967), 85 Ill. App. 2d 454, 229 N.E.2d 10). These elements must be proved by clear, cogent and convincing evidence leaving no reasonable doubt in the mind of the court. *Lonergan v. Daily.*

■■■ We hold that the defendants' evidence raised substantial doubt as to the plaintiffs' performance and its attributability to the contract. Plaintiff Edward Blaise alleged that his wife's (Bessie's) conveyance of her interest in Section 30 was the consideration for defendants' conveyance of their interest in Section 31. However, the deed from Bessie Blaise to Julia and Otto Stein recites a consideration of $415. A deed, regular on its face, raises the presumption that the consideration for the conveyance is that recited in the instrument. (*Garrard v. J. S. Ashbrook Co.* (1920), 222 Ill. App. 387; 26A C.J.S. *Deeds* §189 (1956).) While the court will look to actual consideration in an equity proceeding where consideration is placed in issue (*Ropacki v. Ropacki*; 26A C.J.S. *Deeds* §199 (1956)), introduction of the deed into evidence constitutes a prima facie showing that the consideration recited is the consideration that was received by the grantor. If the grantor denies the recited consideration, he must prove that the recital is false. 26A C.J.S. *Deeds* §189 (1956).

Defendants produced not only a deed reciting consideration other than that alleged by the plaintiffs, but also several documents of public record and cancelled checks which tended to corroborate the deed's recitation. Plaintiffs' sole attempt to rebut this evidence was to make a bald and equivocal denial of the consideration, with no attempt to explain the debts in his name which were apparently paid by defendants, except to deny that he had incurred them. The manifest weight of the evidence supports the defendant's allegation that they in fact paid plaintiffs for the conveyance of their interest in Section 30.

■■ A contract may be specifically enforced according to the terms agreed upon by the parties or not at all. (*Sweeting v. Campbell* (1956), 8 Ill. 2d 54, 132 N.E.2d 523; *White v. Lang* (1948), 401 Ill. 219, 81 N.E.2d 897; *Shaver v. Wickwire*.) The contract alleged here involved a trade of interests in realty, with no additional consideration. The evidence of consideration other than that allegedly agreed upon by the parties raised substantial doubt that Edward Blaise's performance was attributable exclusively to the contract, or that his acts constituted performance at all. Consequently, specific performance should have been denied.

■■ Furthermore, the record before us discloses strong evidence of abandonment of the original agreement by all of the parties. Specific performance of a contract will not be granted to a party whose actions indicate that he has abandoned or acquiesced in the rescission of a contract. *Hayne v. Fenton* (1926), 321 Ill. 442, 151 N.E. 877; *Bennett v. Giles* (1906), 220 Ill. 393, 77 N.E. 214.

■■■ Curiously, the parties argue mutuality of remedy as a point within the abandonment issue. Defendants assert that in conveying his interest in Section 30, Edward Blaise destroyed the mutuality in the alleged contract. Certainly, mutuality is required before a court can specifically enforce a

contract. (*Cohen v. Kosden* (1949), 402 Ill. 429, 84 N.E.2d 358.) Plaintiffs respond that when the act which equity could not require a party to perform has, in fact, been performed, as where Bessie Blaise actually conveyed the interest in Section 30 to defendants, the doctrine of mutuality of remedy will not bar specific performance. This, too, is a correct statement of the law. (*Nyder v. Champlin* (1948), 401 Ill. 317, 81 N.E.2d 923; *Oswald v. Nehls* (1908), 233 Ill. 438, 84 N.E. 619.) However, the mutuality doctrine simply is not relevant to the question of abandonment. The doctrine assumes an existing contract which may, but for want of mutuality, be enforced. In alleging abandonment of the contract, defendants assert that while a contract may have existed once, it does not exist at the time enforcement is sought.

The deed from Edward Blaise to Bessie Blaise does constitute some evidence of Edward's abandonment of the contract, as this conveyance effectively made Edward's ability to perform his part of the bargain contingent upon the cooperation of a person who was presumably capable of independent action. The evidence that consideration other than that allegedly required by the contract was accepted when the conveyance of Bessie Blaise's interest to defendants was made is also strongly indicative of the abandonment of the contract on Edward's part. (*Seitman v. Seitman* (1903), 204 Ill. 504, 68 N.E. 461.) Edward's acquiescence to and affirmance of defendants' assertion of their interest in Section 31 with respect to the proposed sale of the property in 1976 and to the lease which was eventually consummated is still more evidence that he no longer believed that a contract existed between him and the defendants, and those actions are not in accord with his assertion that the contract is still in full force and effect. Additionally, the lengthy delay between the time that Bessie and Edward conveyed their interest to defendants and the time that this action was brought is consistent with an abandonment of the contract by all of the parties. *Hayne v. Fenton* (1926), 321 Ill. 442, 151 N.E. 877; 81 C.J.S. *Specific Performance* §118 (1977).

■■ To support their position that the parties believed that the contract was still in effect, plaintiffs rely on statements allegedly made by defendants to Edward's children to the effect that defendants wanted the children to have their interest in Section 31, and would eventually convey or devise their interest to the children, but would not convey their interest to Edward, because they did not want his wives or stepchildren to have the property. The record discloses that defendants are childless and that Julia's nearest relative by consanguinity is Edward. Consequently, Edward's children are the natural objects of Julia's bounty, and the statements allegedly made by her are more consistent with an expression of that fact than with an affirmation of the alleged contract. Statements of

intent to convey or devise to a family member are subject to careful scrutiny. Without an expression of contractual intent clearer and more unequivocal than would be required in the case of a transaction between strangers, no contract will be found. (*Ranson v. Ranson* (1908), 233 Ill. 369, 84 N.E. 210; *Geer v. Goudy* (1898), 174 Ill. 514, 51 N.E. 623.) Furthermore, the alleged statements indicated that the defendants considered it to be within their rights to transfer their interest in the property at such time and under such conditions as they chose. Their stated conditions for conveyance were certainly not a part of the contract alleged by the plaintiffs.

We hold that the judgment of the circuit court of Jackson County must be reversed. As several issues raised in the pleadings must be reconsidered in light of this decision, we remand for further proceedings consistent with this opinion.

Reversed and remanded.

JONES, P. J., and KARNS, J., concur.