## EVAN WORTH

### *v.*

## MARGARET P. WORTH *et al.*

1. STATUTE OF FRAUDS—*evidence to take case out of the statute.* In order to take a case out of the Statute of Frauds, upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable exclusively to the contract, but the contract must also be established by competent proofs to be clear, definite and unequivocal in all its terms.

2. SAME—*relief where valuable improvements have been made under a contract.* Where a son, by permission of his father, takes possession of land, and puts lasting and valuable improvements thereon, and continues such possession for a number of years, and dies in possession, claiming that the father had, by parol, agreed to convey the land to him, although a court of equity may not decree a conveyance to the heirs of the deceased, it will require the father to pay for the improvements.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Messrs. LYNCH, HOBLIT & FOLEY, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, to enforce the specific performance of an alleged parol contract made by a father, the defendant in the bill, to convey to his son, Otho Worth, a certain tract of land, consisting of eighty acres, in consideration that Otho Worth would take possession of, improve and cultivate the land. The complainants in the bill were the widow and only heir of Otho Worth, he having died intestate before the suit was instituted.

The defendant denied the making of an agreement to convey the land, and set up the Statute of Frauds.

Evan Worth, the defendant, bought the land in 1864. It was then unimproved. Soon thereafter, Otho Worth commenced improving it, which was continued until it was all

fenced and broke, and a house built, when, in the last part of 1867 or the beginning of the year 1868, he married, and moved upon the premises, where he continued to reside and improve the land until he died, on the 6th day of January, 1872. The improvements placed on the land, as disclosed by the evidence, by Otho Worth, were valuable, and worth from $2500 to $3000; but the question presented by the record is, whether the evidence establishes a contract, made by Evan Worth to convey the land, which a court of equity can enforce. The text books do not disagree as to the rule, that, in order to take a case out of the statute, upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable exclusively to the contract, but the contract should also be established, by competent proofs, to be clear, definite and unequivocal in all its terms. If the terms are uncertain, or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as, indeed, upon principle, it should not) be decreed. 2 Story Eq. Jur. sec. 764. This was declared to be the correct rule in *Wood* v. *Thornly*, 58 Ill. 464, upon a state of facts where the same question arose as here. See, also, *Langston* v. *Bates, post*, p. 524.

The authorities all agree that a parol contract to convey will not be decreed in a court of equity, unless it appears to be certain and definite in its terms, and established by evidence free from doubt or suspicion.

In the case under consideration, no witness has been able to testify that he ever heard the defendant and Otho Worth make an agreement in regard to the conveyance of the land. The contracting parties were not brought together by any witness, but the complainants rely entirely upon proof of declarations of the defendant, made to various parties from 1865 to 1873, to establish a contract. While we do not hold that a case may not be made out by proof of the declarations of a person, there are, however, respectable authorities that go that far; yet we are not satisfied that the evidence in this case is of that clear, definite and satisfactory character that it should be to require a court to compel, by decree, the conveyance of land.

The strongest evidence in this case, and that, too, the most in point, is that given by the witness Leonard, who says, in 1863, while he was working for defendant, he said to him, that he "told Otho to go ahead and improve the place, and he would make him a deed for it." The rest of the evidence consists, substantially, of statements made by the defendant, to various witnesses, on various occasions, in which he said he had given the land to Otho; that Otho owned the land; that he intended to give Otho the land—in brief, this is the case made by complainants.

The defendant, in his evidence, denied the making of the statement made by the witness Leonard, but we attach no weight to the defendant's evidence, as he seems to have been successfully impeached. Such is also the case with the witness James Worth; but it seems somewhat strange the defendant would have made the admission sworn to, as it appears, within one month from his son's death, he was claiming the land, but willing to concede the right of the widow to hold the improvements. But, conceding to the evidence of the witness Leonard full faith and credit, still, when the other facts and circumstances are considered, the decree can not be sustained.

Otho Worth paid no taxes on the land, but they were paid each year by the defendant. If the land belonged to Otho, or if it was so understood between him and his father, it is but reasonable to suppose the taxes, each year, would have been paid by him. Again, in 1869, Otho commenced paying rent for the premises, to his father, and from that time until his death, he paid, as rent for the land, one-third of the crops raised thereon. This constituted the relation of landlord and tenant, and it is so utterly inconsistent with the theory that Otho was owner of the premises, that we perceive no satisfactory ground upon which it can be maintained. It is true, this is attempted to be explained by the complainants, from the fact that the defendant had purchased a farm for another son, and exacted rent from his sons to assist in raising money to pay for this farm, but the explanation can not avail. If a

contract had been made by which Otho was to have the land when he placed it in cultivation, as early as 1869 he was entitled to a deed, and it is unreasonable to suppose he would be willing to abandon his rights as purchaser, and assume the relation of a tenant.

At all events, the failure to pay taxes, and the payment of rent from 1869, throw so much doubt and uncertainty on the case made by complainants, that it is no part of the duty of a court of equity to decree a specific performance of the alleged agreement to convey; but it appears, from the evidence, that the improvements made by Otho on the premises are valuable, and, while we are of opinion the evidence is not sufficiently certain and definite to justify a decree for specific performance of the contract, still, equity will not allow the defendant to recover the land without making compensation for the improvements. The debts against the estate of Otho Worth, as appears from the evidence, have been adjusted and paid. The money arising from the improvements is not, therefore, a matter in which the administrator is interested. It belongs to the widow and heir, who are complainants in the bill. We are, therefore, of opinion, in stating the account, the complainants should be allowed the value of the improvements, with interest thereon at six per cent from the time the labor and money were expended in making them, from which should be deducted the rents received by Otho while living, and complainants since, which have not been accounted for.

The decree will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*