HARVEY A. FERBRACHE *et al.*

*v.*

PETER A. FERBRACHE.

*Filed at Ottawa May 19, 1884.*

1. WITNESS—*competency—as against persons defending as heirs.* A mother who has made a warranty deed for a tract of land to her son, is not a competent witness for such son on a bill by him against the heirs of another son, to set aside a prior deed made by her to the deceased son, as a cloud upon the title of the complainant, in respect to facts which occurred in the lifetime of the deceased son, she having a direct interest in the result of the litigation. Nor is the complainant competent.

2. WARRANTY OF TITLE—*whether a protection as against subsequent acts of grantee.* Where the owner of a tract of land has made two warranty deeds for the same, to different persons, the first of which is attacked and sought to be avoided by the second grantee on the ground that the first grantee had rescinded the contract, or reconveyed whatever interest he had, the grantor's interest is not equally balanced, for the reason that the covenants in the prior deed would not extend to a consequence of any act of the prior grantee, and embrace the case of any future defect of title in him, caused by a subsequent conveyance of the land made by himself.

3. STATUTE OF FRAUDS—*verbal contract to convey land—part performance.* By the Statute of Frauds all contracts for the transfer of title to land must be in writing, and to take a case out of the statute on the ground of part performance, it is indispensable that the contract shall be established by competent proofs to be clear, definite and unequivocal in all its terms, and that possession shall have been taken of the land under the contract, and payment of the purchase money made.

4. Where the evidence, on a bill to enforce a verbal contract for the transfer of land, is of a loose and vague character, lacking in definiteness as to the interest surrendered,—whether a voluntary gift or not, and what were the terms,—and it is not shown that any consideration has been paid, or there was any to be paid, the contract will not be specifically enforced.

5. LIMITATION—*as to who may acquire an adverse title.* Where a person having title to land leaves another in possession under him, the person so left in possession can not, while holding possession under the owner, acquire an adverse title against him or his heirs by reason of his actual possession and payment of taxes, under the Limitation law.

WRIT OF ERROR to the Circuit Court of Stark county; the Hon. N. M. LAWS, Judge, presiding.

On the 2d day of September, 1855, one Peter Ferbrache died intestate, seized of the land in controversy in this case,— a certain described sixty acres of land in Stark county,— leaving surviving him his widow, Elizabeth Ferbrache, and several children, his heirs at law. Soon afterward, Peter A. Ferbrache, one of said children and heirs, filed a petition for partition and assignment of dower as to said land, and other lands of which his father died seized, which resulted in the assignment of the said sixty acres of land to the widow, Elizabeth Ferbrache, as her dower, and an order of sale of all the lands, including the reversion of said sixty acres so assigned as dower. Upon sale being made, the widow became the purchaser of the reversion of said sixty acres, and a commissioner's deed was made to her for the same. The widow thenceforward continued to occupy the land until the 3d day of November, 1856, when she made a warranty deed of the same to her son Daniel D. Ferbrache. Upon receipt of this deed, Daniel D. went into possession of the land, and for some time lived in the same house upon it with his mother, the said Elizabeth. In the course of about a year, however, he removed some five miles distant, to a farm at Lawn Ridge, in Peoria county, leaving his mother in the possession and occupancy of the land.

In the year 1865 or 1866 said Daniel D. Ferbrache died, leaving surviving him five minor children, his heirs at law. Some time in the year 1866, the administrator of the estate of Daniel D. Ferbrache, and guardian of some of his children, finding among his papers the unrecorded deed of Elizabeth Ferbrache to said Daniel D., caused the same to be duly recorded in the recorder's office of Stark county. On the 9th day of January, 1874, the said Elizabeth Ferbrache made a warranty deed of the same land to her son Peter A. Ferbrache, who then resided in El Paso, Woodford county. Said Elizabeth continued to reside upon the land with her son Peter A., up to the time of her death, which occurred

in the month of January, 1875, it being the consideration of her deed to Peter A. that he should support her during her life.

On the 11th day of April, 1874, said Peter A. Ferbrache filed his bill in chancery against the minor heirs of Daniel D. Ferbrache, to remove the said deed of Elizabeth Ferbrache to Daniel D., as a cloud upon the title Peter A. had derived from said Elizabeth through her deed to him of January 9, 1874. In this bill Peter A. alleges that some time in the year 1856 or 1857, said Elizabeth, being then the owner of the land in fee, made a contract selling the same to Daniel D., upon a credit, for the sum of $2000, and made him the deed aforesaid; that Daniel D. gave to said Elizabeth his promissory notes for $2000, in payment of the purchase money; that Daniel D. went into possession of the land under the deed, and held possession under the same for about one year; that then said Elizabeth and Daniel D. entered into another contract, by which it was agreed that said contract of bargain and sale of the land should be rescinded, and that Daniel D. should surrender the land, and that she should cancel and return to him his notes for the purchase money; that she surrendered the notes, and he surrendered the land and the deed, and then the deed and notes were destroyed. By an amendment to the bill it is alleged that the deed was not destroyed, but by some mistake, accident or other means the same was left still in existence, and was found among the papers of Daniel D. after his death, and caused to be recorded by his administrator.

The heirs of Daniel D., in their answer, deny any such contract of rescission. They also set up the Statute of Frauds in their defence. They also allege that at the time Daniel D. left the land and went to Lawn Ridge there was an agreement between him and his mother that she was to have the land rent free during her life, after which he was to resume possession under his deed. They also filed their

cross-bill, setting up Daniel D.'s ownership of the land; that some time in 1856 or 1857 he delivered up possession thereof to his mother, Elizabeth, with the understanding that she should occupy the same, taking the rents and profits, and paying the taxes thereon, during her life, and at her death Daniel D. should become repossessed of the same, and praying that the possession of the premises be decreed to them, and that Peter A. account for the rents and profits from the time of the death of said Elizabeth, and that his deed be declared a cloud upon their title. July 30, 1875, Elizabeth N. Schenck, and the other heirs of Peter Ferbrache, deceased, filed their original bill against Peter A. Ferbrache and the heirs of Daniel D. Ferbrache, alleging that said commissioner's deed to Elizabeth Ferbrache had been rescinded, and vested no equitable title, and that it misdescribed the property, so that no legal title was ever vested by it; that the deed of Elizabeth Ferbrache to Daniel D. Ferbrache had been abandoned and rescinded, and that the deed of Elizabeth Ferbrache to Peter A. Ferbrache was fraudulent and void, wherefore the equitable title of the land was still in the heirs of Peter Ferbrache, deceased, and prayed that said conveyances be set aside as clouds on their title. Answers and cross-bill were filed.

This case was, by a consent order, consolidated, for the purposes of trial, with the cause first named, with a stipulation that evidence taken in either case be also read in the other, so far as material and competent, and both causes were tried together. The court below found that the equities were with Peter A. Ferbrache, and decreed that the deed from Elizabeth Ferbrache to Daniel D. Ferbrache be set aside as a cloud upon the title of Peter A., and all of said bills and cross-bills impeaching his title were dismissed. The heirs of Daniel D. Ferbrache alone sued out this writ of error.

Mr. JOHN MUCKLE, for the plaintiffs in error:

The grounds of relief set out in the bill are within the Statute of Frauds, and can not be established by parol evidence.

Where an estate has passed by deed, its cancellation or destruction will not divest the title from the grantee and reinvest the same in the grantor. 2 Blackstone's Com. 309, note by Chitty, and note by Sharswood; *Chipman* v. *Whitlemore,* 23 Pick. 231; *Morgan* v. *Elam,* 4 Yerg. 375; *Shutt* v. *Large,* 6 Barb. 373; *Raynor* v. *Wilson,* 6 Hill, 469; *Mallory* v. *Stoddard,* 6 Ala. 801; *Jordan* v. *Pollock,* 14 Ga. 145.

The bill is without equity, unless tortured into a bill for specific performance. Then the Statute of Frauds applies, and it is indispensable, to avoid the statute, that the contract shall be established by competent proofs to be clear, definite and unequivocal in all its terms, etc. *Worth* v. *Worth,* 84 Ill. 442; *Langston* v. *Bates,* id. 524; *Pickerell* v. *Morss,* 97 id. 220; *Padfield* v. *Padfield,* 92 id. 198.

Before a party can maintain a bill to remove a cloud from his title to land, he must show a title, either legal or equitable. *Hopkins* v. *Granger,* 52 Ill. 504; *West* v. *Schnebly,* 54 id. 523; *Emery* v. *Cochran,* 82 id. 65.

The complainant was not a competent witness in his own behalf, and Elizabeth Ferbrache, as to matters which occurred in the lifetime of Daniel D. Ferbrache, was incompetent, as she was testifying in her own interest. *Boynton* v. *Phelps,* 52 Ill. 210; *McCann* v. *Atherton,* 106 id. 31; *Alexander* v. *Hoffman,* 70 id. 114; *Richardson* v. *Hadsell,* 106 id. 476; *Hurlbut* v. *Meeker,* 104 id. 541.

The second section of the act relating to evidence also excludes Elizabeth Schenck, Judith Joh and Susannah Jones, they being both parties to the suit and parties in interest.

Messrs. HOPKINS & HAMMOND, for the defendant in error:

Where a grantee and grantor, in ignorance of the law, attempt, *bona fide,* to reconvey land by destroying an unre-

corded deed, it is held that the equitable title passes, and a conveyance may be had, and such case is not within the Statute of Frauds. *Dunwiddie* v. *Bell et al.* 95 Ill. 360; *Bright* v. *Bright*, 41 id. 97; *Kurtz et al.* v. *Hibner et al.* 55 id. 514; *Langston* v. *Bates*, 84 id. 524; *Bohanan* v. *Bohanan*, 96 id. 591; *McDowell* v. *Lucas*, 97 id. 489.

When Elizabeth Ferbrache conveyed to Peter A., she had a perfect title, under both the fourth and sixth sections of the Limitation act. Mrs. Ferbrache had no legal interest in the question which of two warranty deeds should prevail, for she was equally liable on the covenants of each of them.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

Before the death of Elizabeth Ferbrache, Peter A. Ferbrache caused her deposition to be taken in support of his bill. We do not regard this deposition, so far as it respects facts which occurred in the lifetime of Daniel D. Ferbrache, as competent testimony against his heirs. The provision of the statute is, that no party to any civil action, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, when any adverse party sues or defends as heir of any deceased person, unless called by such adverse party, except in certain specified cases, the only one of which affecting this case is, that such party or interested person may testify to facts occurring after the death of such deceased person whose heir so sues or defends. (Rev. Stat. 1874, p. 488, sec. 2.) Elizabeth Ferbrache was directly interested in the event of the suit, by reason of her warranty deed of the land to Peter A. Ferbrache. If he succeeds in this suit, her covenants of warranty are satisfied. If he does not succeed, she is liable upon such covenants,—hence her direct interest in the event of the suit, and the incompetency of her testimony against the plaintiffs in error. *Plain* v. *Roth*, 107 Ill. 589.

We perceive no force in the position taken that plaintiffs in error are not brought within the provision of the statute, simply by the fact that their title came to them by descent from their father, as he took by purchase, and that if any title descended to them it was a title by purchase. It matters not in what mode the title of the ancestor came to him. The undoubted title to the land, which once was in Daniel D. Ferbrache, is claimed to have been afterward parted with by him. Plaintiffs in error deny that the title ever was so parted with, and insist that the land descended to them from said Daniel D., and in the capacity of heirs to him they claim the land and defend the suit, and so come precisely within this statute provision.

The assertion that Elizabeth Ferbrache had no legal interest in the question which one of her two warranty deeds to Daniel D. and Peter A., respectively, should prevail against the other, because she was equally liable on the covenants of each of them, is obviously untrue. The covenants in her deed to Daniel D. clearly would not extend to a consequence of any after act of his, and embrace the case of any future defect of title in him, caused from a subsequent conveyance of the land made by himself.

Peter A. Ferbrache being a party to the suit, his testimony is alike incompetent, under the statute. There remains, then, in support of the allegation of the bill of a rescission of the sale to Daniel D. Ferbrache, but the testimony of the two daughters of Daniel D.,—Elizabeth Schenck and Judith Joh, and their husbands, John Schenck and David Joh, as to declarations made by Daniel D. His declarations, testified to by these witnesses, may be summarized about as follows: Elizabeth N. Schenck: "He (Daniel D.) said he had given it (the land) up to keep peace, and that mother was to keep it." John Schenck: "He said he gave it up on condition that she (mother) would hold it while she lived." Judith Joh: "He told me he had given it up to her (mother)

on her promise never to sell it." David Joh: "He told us he had given it up with the understanding she should keep it."

There are some corroborating facts, as, that Daniel D. left the land, leaving his mother upon it, and went on a farm at Lawn Ridge, and subsequently paid no taxes on the land, nor, so far as appears, exercised any act of ownership over it; that during his lifetime (nine or ten years) he never put his deed upon record, and several years afterward, when Mrs. Ferbrache agreed to deed ten acres of the land to Peter A. Ferbrache, Daniel D. got up a remonstrance, with the other heirs, to dissuade and prevent her from deeding it. On this occasion he did not claim the land himself, but complained that it was contrary to the arrangement he had made with his mother. And Mrs. Ferbrache made improvements upon the land to the amount of some $460. There is in the case the testimony of Solomon Ferbrache, who was living in the family at the time of Daniel D. leaving the place and going to Lawn Ridge, that Daniel D. said on that occasion "he would move up to his farm on Lawn Ridge, and let his mother have the home place her lifetime; this was the substance of the agreement between them, to the best of my recollection." This witness appears at that time to have been but about fourteen years of age, and there may be other circumstances which detract from his credibility. The corroborating facts do not point necessarily to a rescission of the sale which had been made by Daniel D. to his mother, but would agree very well with the theory that he had given up the place to his mother for her life.

We are of opinion that the evidence comes short of sustaining the allegations of the bill. It is of a loose and vague character, and lacks in definiteness as to what was the interest surrendered,—whether a voluntary gift, or not, and what were the terms. Whatever may have been the arrangement with the mother, shown by the evidence, it appears to have been attended with conditions which would make it in-

compatible with the deed which was made to Peter A. Ferbrache. The bill can be viewed in no more favorable light than as essentially one to enforce an oral contract for the conveyance of land. By the Statute of Frauds all such contracts must be in writing. To take a case out of the statute on the ground of part performance of the contract, it is indispensable that the contract shall be established by competent proofs to be clear, definite and unequivocal in all its terms, (*Worth* v. *Worth*, 84 Ill. 442, *Bohanan* v. *Bohanan*, 96 id. 591, 2 Story's Eq. Jur. sec. 764,) that possession shall have been taken of the land under the contract, and payment of the purchase money made. It does not appear here that there was any consideration paid, or to be paid, and there is not that clearness and satisfactoriness of proof which is required in order for the enforcement of a verbal contract in respect to land.

The attempt to make title in Mrs. Ferbrache under the Statute of Limitations, by seven years' possession and payment of taxes, manifestly fails. She was in the possession of the premises under Daniel D. Ferbrache, as we find, and was left by him in such possession under him. While holding such possession under him she could acquire no adverse title against him by reason of her actual possession and payment of taxes.

Our conclusion is, that the court below erred in its finding in favor of Peter A. Ferbrache and decree of relief to him, and also in refusing the relief prayed for in the cross-bill of plaintiffs in error, and in dismissing the same. *Lloyd* v. *Karnes*, 45 Ill. 62.

The decree in the case of Peter A. Ferbrache against the heirs of Daniel D. Ferbrache will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE SCOTT was not present at the consideration of this case, and took no part in its decision.