MARY LONERGAN, Appellant, *vs.* MICHAEL DAILY, Admr., *et al.* Appellees.

*Opinion filed December 16, 1914.*

1. SPECIFIC PERFORMANCE—*when oral contract to convey land will not be enforced.* An oral contract to convey land will not be specifically enforced unless the contract is certain and unequivocal in its terms and is established by convincing evidence.

2. SAME—*what necessary to take oral contract out of the Statute of Frauds by part performance.* To take an oral contract out of the Statute of Frauds by part performance all acts performed thereunder must be clear and definite and be referable exclusively to the contract.

3. SAME—*mere declarations of alleged promisor are not sufficient.* Mere declarations of the alleged promisor do not constitute such clear and unequivocal testimony as is necessary to establish an oral contract to convey land.

4. SAME—*when promise to make a gift of land will not be enforced.* A promise to make a gift of land will not be enforced in equity unless the promise has been acted upon by taking possession of the property and expending money in making improvements.

5. SAME—*when collecting rents and paying taxes do not show possession.* Evidence that the complainant in a bill to enforce an alleged oral contract to convey land collected the rents and paid taxes and bills for improvements, taking receipts in her own name, does not show that she was in possession under the alleged contract, where the evidence tends strongly to show that she had access to the alleged promisor's money and was acting as his agent in such matters.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

ALONZO HOFF, for appellant.

DRENNAN & LAWLER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellant, Mary Lonergan, in the circuit court of Sangamon county, against appellees, Michael Daily and Sarah E. Murphy, as heirs-at-law of Patrick Daily, deceased, and said Michael Daily as administrator of said deceased, praying for specific performance of a parol agreement for the purchase of real estate, or, in the alternative, to recover for money and board furnished said Patrick Daily, and for an accounting. After the pleadings were settled the cause was referred to a master in chancery to take evidence. He reported, recommending that the bill be dismissed at the complainant's costs for want of equity. After a hearing in the circuit court a decree was entered in accordance with the recommendations of the master. This appeal is from that decree.

The deceased, Patrick Daily, was an uneducated man about seventy-three years of age and had resided on a farm in Illinois much of his life. His wife died while he was living on the farm. He had a grown son and daughter, who were living, with their families, away from him. He was considered a man of means, owning two farms and some chattel property. In 1908 he moved to Springfield, Illinois, and shortly thereafter went to board with the appellant at her home in that city. Her sister and niece made their home with her, and she also had boarding with her a part of the time another elderly man. Daily boarded in her house for some three or four years and up to the time of his death, on July 26, 1911. During the year 1909 he purchased the premises here in controversy, being a house and lot in Springfield located near where appellant resided. She claims that Daily on January 24, 1910, verbally agreed to convey said premises to her for the sum of $1550, which

she that day paid him, and also in payment for two years
and ten months' board then due her, and on the further
condition that she would keep and care for him during the
rest of his life.   The brother of appellant is the only wit-
ness who testified to this agreement being made on the date
above referred to.   He also testified that Daily told him
about a year later, shortly before his death, that he was
going down-town in a few days to make a deed convey-
ing the premises to appellant.   There is testimony of other
witnesses tending strongly to show that the brother was not
in Springfield on the date that he claims he had this last
talk with Daily.   The evidence shows that appellant did
pay to the deceased, on January 24, 1910, $1550, but the
evidence also clearly shows that in December, 1908, Daily
loaned appellant $1600, to be used by her as part payment
for another piece of property in Springfield which she had
then purchased.   Appellees claim that the $1550 paid to the
deceased by appellant was in re-payment of this loan.   The
record does not show any payments by the deceased to ap-
pellant for room and board, but it is shown that she col-
lected rents on the property in controversy at the rate of
$23 a month after this purchase until the time of his death,
and that the deceased collected rent from his farms and
drew a considerable amount of cash from the bank during
the period he was boarding with appellant.   Counsel for
appellees argue that as it cannot be shown where this money
has gone, it reasonably follows that it was used by the de-
ceased in paying his board and other expenses, including
the repairs and improvements on the property here in con-
troversy.   These improvements, such as electrical fixtures,
awnings and screens, counsel for appellant claims she paid
for out of her own money.   The tenant of the property
testified that appellant stated to her on several different oc-
casions that the rent money from the property went to pay
Daily's board.   Another witness testified that the appellant
made the same statement to her.   Appellant claims that her

possession of the premises is shown by the fact that she collected the rents and paid bills for improvements and taxes, taking receipts in her own name, and her open claim of ownership and conduct in that regard. The evidence tends strongly to show that appellant, during all the time the deceased, Daily, was living with her, had access to his cash. It is impossible to tell from the testimony whether she paid these expenses out of her own money or out of Daily's money. It is not claimed that she ever occupied the premises in controversy, and the tenant, Mrs. Myers, testified that she never understood that she was paying the rent to appellant as the owner, but that appellant was simply acting as the agent of Daily. Since Daily's death his administrator had collected the rents and had possession of the property.

The rule is well settled in this State that a parol contract for the conveyance of real estate will not be specifically enforced in a court of equity unless it appears to be certain, definite and unequivocal in its terms; that to take it out of the Statute of Frauds on account of part performance, all acts performed thereunder must be clear and definite and referable exclusively to the contract; that the proof upon which the conveyance is asked must be established so convincingly as to leave "no reasonable doubt in the mind of the court." (*Langston* v. *Bates,* 84 Ill. 524; *Seitman* v. *Seitman,* 204 id. 504; *Casstevens* v. *Casstevens,* 227 id. 547; *Vail* v. *Rynearson,* 249 id. 501; *Patterson* v. *Patterson,* 251 id. 153.) Mere declarations of the promisor or donor do not constitute such clear and unequivocal testimony. (*Worth* v. *Worth,* 84 Ill. 442; *Geer* v. *Goudy,* 174 id. 514.) The rule is also firmly settled that equity will not enforce the promise of a gift of land unless the promise has been acted on by taking possession of the land and there has been an expenditure of money in making improvements by the person requesting such enforcement. (*Ranson* v. *Ranson,* 233 Ill. 369; *White* v. *White,* 241 id. 551.)

The competent evidence in the record falls far short of being so clear, definite and unequivocal as to warrant the relief prayed in this bill. Indeed, the evidence relied upon to support appellant's contention is of a most unsatisfactory character. The great weight of the competent testimony clearly fails to support the allegations of the bill.

The briefs discuss at some length the competency of certain witnesses. In view of the conclusion already reached it is unnecessary to consider or decide those questions. .

The decree of the circuit court will be affirmed.

*Decree affirmed.*