WILLIAM RICHARDSON, Appellant, *vs.* JEANETTE LANDER
*et al.* Appellees.

*Opinion filed February 17, 1915.*

1. SPECIFIC PERFORMANCE—*oral contract must be certain and definite and be clearly established.* In order to entitle a party to specific performance of an oral contract to convey land the con-·tract must be certain and definite in its terms and be established by clear evidence, and it is also essential that it be established by clear and convincing proof that the promisee went into possession under the alleged contract and made valuable improvements with his own means upon the faith of the promise and with the knowl-·edge of the promisor.

2. SAME—*clearer proof is required where alleged contract is between father and son than between strangers.* Clearer proof is required to establish the elements necessary to justify the enforcement of an oral contract to convey or devise land where the complainant is the son of the alleged promisor, who has been dead for several years before the filing of the bill to enforce the contract, which is claimed to have been made some twenty years before the father's death.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

BARRY & MORRISSEY, and LIVINGSTON & BACH, ·for appellant.

DEMANGE, GILLESPIE & DEMANGE, and WELTY, STERLING.& WHITMORE, for appellees. ·

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of McLean county, dismissing, for want of equity, appellant's bill asking for the specific performance of a parol contract to convey eighty acres of land.

Matthew Richardson, Sr., in his lifetime was the owner of the eighty acres in controversy. He also owned an eighty immediately north of said eighty, and one hundred and sixty acres across a highway just west of the two

eighties. He sold the one hundred and sixty acre tract to his son Matthew Richardson, Jr., in 1907. There were no improvements on the one hundred and sixty acres sold. Matthew Richardson, Sr., lived on the north eighty east of the road until his death, May 1, 1911. He died testate, leaving nine children surviving him as his only heirs-at-law. His son Matthew, and son-in-law Ira Lander, were appointed and qualified as executors of the will. Appellant, William Richardson, a son of Matthew Richardson, Sr., lived on the south eighty east of the road at the time of his father's death and for more than twenty years prior thereto. This eighty was divided, the east forty acres in one field, the north half of the west forty in another field. The improvements were on the south half of the west forty, and, with lots, garden and truck patches, occupy twelve or fourteen acres. There was also a small orchard on the south half of the west forty. Appellant in his bill alleged that in 1890 he and his father-in-law, William Ross, were about to enter into a contract with George W. Funk to farm a considerable body of the latter's land, and that his father, Matthew Richardson, promised him if he would abandon that enterprise and continue to live on the eighty in question so long as the father should live, and pay a reasonable rent therefor, he would will the premises to appellant. The bill avers the agreement with Funk was terminated and he continued to live on and pay rent for the said eighty until his father's death, and that, with the father's consent, appellant made improvements thereon to the value of $2500. The bill sets out the will of the father, by which appellant was given a money legacy of $1000 and three other sons of the testator were given $500 each. The will charged the appellant with an advancement of $1000, three other sons and one daughter with $1500 each, and another daughter with $250. The will directed that within two years after the death of the testator all his land should be sold and the proceeds divided equally among his children.

The bill avers the probate of the will, the performance of the terms of the contract by appellant, the failure of performance by the testator, and the refusal of the appellant's brothers and sisters, beneficiaries under the will, to carry out the terms of the contract, and asks for its specific performance. Defendants to the bill, appellees here, who are the brothers and sisters of appellant and the executors of the will of Matthew Richardson, deceased, answered the bill, denying the making of the contract. They denied appellant was in possession of the land under the contract as alleged, and averred he was in possession as tenant. They denied the making of valuable improvements by appellant. The answer further averred such parol contract, if made, is void under the Statute of Frauds and Perjuries. Replication was filed and the cause referred to the master in chancery to take the testimony and report his conclusions of law and fact. The master reported recommending a decree as prayed in appellant's bill. The chancellor sustained exceptions to the master's report and dismissed the bill for want of equity.

Charles F. Ross, brother-in-law of appellant, was the only witness who testified to the making of the oral contract. He testified his father, William Ross, and appellant, had arranged to farm the George W. Funk land as partners, and that in September, 1890, in Atlanta, Illinois, he heard Matthew Richardson, Sr., say to witness' father and George Funk, and in the presence of appellant, that "Bill is going to leave me and come down to you men; I don't want him to come; I have come down to see if I can't get him to stay." Witness testified Funk there told appellant that he ought to stay where he was, since his father wanted him, and that he and Ross would let him off; that Matthew Richardson then said, "I have offered him this eighty acres of land if he will stay;" that appellant replied he knew he had but that he had nothing to show for it, whereupon Matthew Richardson told appellant if he would

come back and stay on the place as long as he (Matthew) lived, and pay the same rent he had been paying, he would, when through with it, give it to appellant, and that Funk and Ross could prove what he said. Witness testified appellant then said he would stay on the place as long as he lived, and so told Funk and Ross. Funk and Ross are dead. The proof shows appellant did not leave the premises in question in 1890 but continued to live thereon until after his father's death.

In further proof of the making of the contract five or six witnesses of appellant testified to statements and conversations of Matthew Richardson at different times after the alleged making of the contract, in which to some he said the land in question was appellant's or that he was going to leave it to appellant, and to some he said he had agreed to give appellant the land if he would not leave him. One of the witnesses testified appellant on one occasion did not want to buy some fruit trees, and his father told him to buy the trees,—that it was his eighty anyhow. Another of the witnesses testified he asked Matthew Richardson if he was going to re-build a barn that burned, and he replied he was not; that appellant could build to suit himself; that he would get it anyhow, some day. Several witnesses testified to the different improvements made on the premises while appellant lived thereon, which they stated cost about $2500. As to the payment of rent by appellant, one witness testified he asked the father what rent appellant was paying, and the father replied he did not charge him as much as he would a stranger, and said he did not pay much. Two hired hands of appellant,—one who worked for him a year some ten or twelve years ago and for appellant's father some three or four years following the year he worked for appellant, and the other who worked for appellant the two years preceding the father's death,—testified the crops for those years were divided between appellant and his father.

Appellees introduced evidence to show appellant was not in the sole possession of the eighty acres in question from the date of the making of the alleged contract to the death of the father, and that the only part of the eighty he was in exclusive and continued possession of, was the twelve or fourteen-acre tract upon which were situate the house and other improvements; that the twenty acres of pasture, which was the north twenty of the forty the house was on, was, with the exception of a few years, used and controlled by the father, and that the east forty, which was plow land, was likewise, with the exception of three or four years, used and controlled by the father. It was also testified that the appellant, from about the time of the alleged contract, rented and farmed the one hundred and sixty acres west of the road until its sale, in 1907. After the sale of the west one hundred and sixty acres by the father to Matthew Richardson, Jr., complainant rented the east one hundred and sixty acres, except about eleven acres of the north eighty, upon which were situate the improvements and on which the father lived. Complainant continued to farm it until after the death of his father. The father died May 1, 1911. Soon thereafter appellant paid the executors of his father's estate $600 as back rent, which he admitted owing his father. March 13, 1912, appellant paid the executors $1039.50 rent for the east one hundred and sixty acres for the year 1911. Appellant testified he told the executors of the contract with his father at the time of the payment of the rent for the year 1911. This is denied by the executors. In February, 1912, the executors rented the south eighty to appellant for that year for a cash rental of seven dollars per acre. He wanted the entire one hundred and sixty acres, but the north eighty was rented by the executors to appellant's sister, who lived thereon. One of the executors, Ira Lander, testified leases were drawn for each eighty and the one for the south eighty was given to appellant to sign, and that in a day or two he returned it unsigned and com-

plained that the lease only covered eleven acres instead of eighty. It was discovered that in drawing up the lease the number of the section (11) had been inserted instead of the number of acres (80), and the executor took the lease and had it corrected and gave it back to appellant the same day. The lease was never returned by appellant to the executors but he remained in possession and farmed the land that year. The executors asked him for the rent when due, which he refused to pay and referred them to his attorneys.

In the fall of 1911 or spring of 1912 the executors were trying to get the written consent of all the heirs to sell the land within a year after the death of Matthew Richardson, Sr., and appellant, when approached, said he would not sign then, but if the others signed it he would. At this time a notice was served on appellant to vacate the farm March 1, 1912, and he asked the executors what they were going to do about the improvements he had put on the eighty, mentioning certain improvements he claimed he had made and paid for. By agreement of the parties, John Kitch, a carpenter, was to value the improvements mentioned by appellant, and he fixed their value at about $1200. Executor Lander testified they then told appellant they would allow him credit for this sum on a $6000 indebtedness he owed the estate. Appellant made a counter-proposition that if appellees would pay a $4000 note of appellant, on which his father was security, and release him from the $6000 he owed the estate, he would release all his right and interest in the estate. Lander testified he told appellant he would have to see the other executor. Witness testified he and the other executor called on appellant July 9, 1912, and told him they rejected his proposition, and also objected to his claim of $2500 for improvements which he had filed June 4, 1912, against the estate of his father. This claim was objected to by the executors and was withdrawn by appellant before any hearing was had to determine whether the same should be allowed. The greater part of Lander's

testimony was corroborated by the other executor, Matthew Richardson, Jr.

There was a conflict in the evidence as to what improvements were made and paid for by the appellant. Appellees contended that some, at least, of the improvements claimed to have been paid for by appellant were paid for by his father. Several witnesses of appellant testified to different improvements made by appellant going to make up the $2500 claim filed against the estate, which consisted of a barn, a crib, an addition to the house, of fences, sheds, the purchase and planting of fruit trees, and tiling. Several witnesses testified, for appellees, to improvements made and paid for by the father in his lifetime, consisting of tiling, painting the house and barn, the building of fences, etc., and appellees insist that for the improvements made and paid for by appellant he was given credit, from time to time, on the rent he owed his father. Appellees introduced proof that appellant, during his father's lifetime, frequently spoke of buying the eighty in question, and also of his intention of moving off the same. While the payment of rent by appellant to his father is not inconsistent with the terms of the contract claimed, yet the payment of rent for the eighty after the death of the father, together with the leasing of the same from the executors for the year 1912, the proposition made the executors for the release of appellant's interest in his father's estate, statements of appellant's desire to buy the eighty, and other declarations, are not consistent with what would be expected from one who claimed the eighty acres in question, under the terms of the contract, from the date of his father's death.

In June, 1912, more than a year after the father's death, appellant filed a claim against his father's estate for $2500 for improvements made upon the eighty acres in dispute. The claim was for "improvements and buildings placed on lands of deceased with his knowledge and consent and his promise to pay for same, $2500," and was sworn to by

appellant.   Whether the filing of this claim.was a waiver
of the contract, as claimed by appellees, or not, it was in-
consistent with appellant's present claim to the land by vir-
tue of the contract of 1890.   If appellant expected to get
the land, he was not entitled to payment from the estate
for improvements made thereon.   Appellant insists, how-
ever, that at the time the claim was filed he believed all
who were present at the making of the contract between
him and his father were dead, and that he could not, there-
fore, prove the making of the contract, and, so believing,
he filed the claim; that when he later learned the witness
Charles F. Ross was present and heard the contract made
and that he could prove the same by him, he withdrew the
claim and filed this suit for specific performance of the con-
tract.   There was testimony on the part of appellees of
acts and statements of appellant's father with reference to
the eighty acres in question, and of the appellant's offer to
buy the same, wholly inconsistent with the alleged contract.
Both of the executors testified that when appellant was ne-
gotiating for a lease of the eighty acres for 1912 he said
if he did not get it he would have no place to go; that he
wanted to stay on the place another year and would then
go to Iowa, where he had bargained for a farm.   ·

Without further referring to the testimony, it is suffi-
cient to say a consideration of it convinces us that we would
not be warranted in reversing the decree on the ground that
it was palpably contrary to the weight of the evidence.   It
is laid down by all the authorities that in order to entitle
one to a specific performance of a parol contract to convey
land the contract must be certain and definite in its terms
and must be established by evidence free from doubt and
suspicion.   (*Standard* v. *Standard,* 223. Ill. 255; *Ranson*
v. *Ranson,* 233 id. 369.)   In *Worth* v. *Worth,* 84 Ill. 442,
the court said : "The authorities all agree that a parol con-
tract to convey will not be decreed in a court of equity un-
less it appears to be certain and definite in its terms and

established by evidence free from doubt or suspicion." Not only must a definite and unequivocal contract be proved, but it is also essential that it be established by clear and convincing proof that the promisee went into possession under the contract and made valuable improvements upon the property with his own means upon the faith of the promise and with the knowledge of the promisor. (*Ranson* v. *Ranson, supra; Standard* v. *Standard, supra.*) Clearer proof is required where the alleged contract is between father and son. (*Ranson* v. *Ranson, supra.*) During three-fourths, or more, of the time elapsing between the making of the alleged agreement and the death of appellant's father appellant was not in possession of and did not cultivate or control to exceed twenty acres of the eighty-acre tract, but rented and farmed the one hundred and sixty acres on the west side of the public highway, upon which there were no buildings. There was proof to the effect that appellant's father complained to him that he was not paying rent for the twelve or fourteen acres he had possession and control of, in connection with the buildings. There was also proof that appellant's father paid considerable sums for improvements on the eighty acres after the making of the alleged contract. While the improvements appellant claims to have paid for were proven by him to have been worth $2500, the evidence is not very satisfactory that he paid for all the improvements going to make up the estimate of $2500. While there is no proof that appellant's father paid him for improvements he made, by deductions from the rent, it is by no means clear that the appellant paid an adequate or customary rent. There is no proof of the amount of rent that appellant agreed to pay. There was testimony that his father said he did not charge him as much rent as he would a stranger, and there is also proof that appellant's father complained to him that he did not pay the rent for the twelve or fourteen acres he occupied until his father's death. But whatever the truth may be as to the payment of rent

and the making of improvements by appellant, the evidence does not meet the requirement necessary to entitle appellant to the specific performance of the alleged oral agreement.

The decree is affirmed.                    *Decree affirmed.*