# A. M. Kauffman, Appellant, v. Joel Miller, Appellee.

1. IMPROVEMENTS, § 5*—*when owner of land must account for.*
Where a son-in-law had for 17 years occupied a farm belonging to
his father-in-law, under an arrangement between the latter and his
daughter which the son-in-law understood required him to pay his
father-in-law parts of the crops raised and certain cash each year,
and also that the land was, upon the death of the father-in-law, to
become the property of the son-in-law and his wife, and where, after
part of the land had been conveyed to the daughter, the son-in-law
was expelled from the other land, the father-in-law was required to
account for all expenditures of time and money made by the son-in-
law in making lasting improvements on all premises of the father-
in-law, except those so conveyed.

2. ACCOUNT—*extent of duty to account for expenditures under
supposed agreement.* Where a son-in-law had for 17 years occupied a
farm belonging to his father-in-law under an arrangement between
the latter and his daughter which the son-in-law understood required
him to pay his father-in-law parts of the crops raised and certain
cash each year, and also that the land was, upon the death of the
father-in-law, to become the property of the son-in-law and his wife,
and where, after part of the land had been conveyed to the daughter,
the son-in-law was expelled from the other land, the father-in-law,
although required to account for expenditures made by the son-in-law
on the land excepting that conveyed to the daughter, was not re-
quired to account for money expended by the son-in-law, in acquiring
title in himself, to 7 acres which had stood outside a partition fence,
and which, after removing such fence, he fenced in with the father-
in-law's land; nor was an accounting required for money spent by
the son-in-law without the father-in-law's knowledge, to meet the
difference between the price demanded for a 40-acre tract purchased
by the father-in-law and that which the latter had offered therefor.

3. IMPROVEMENTS, § 7*—*when hearsay admissible to show good
faith.* Testimony by a husband, in an action against his father-in-
law to state an account of expenditures made by the husband during
his occupancy of the defendant's land for 17 years, that his wife, who
was defendant's daughter, told him in substance that her father had
agreed that if she and plaintiff went into possession of the land in
question and would make improvements they could in the end have
the land, was competent to show what plaintiff's belief was when he
made the improvements, as to who was to be benefited thereby,
although it would not have been competent to establish the fact that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

a contract had been entered into between defendant and plaintiff's wife, acting for him as well as for herself.

Appeal from the Circuit Court of Douglas county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded with directions. Opinion filed April 29, 1919.

A. L. GILLIOM and CHARLES TROUP, for appellant.

P. M. MOORE and JOHN H. CHADWICK, for appellee.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

Appellant is the son-in-law of appellee. For 17 years he occupied a farm belonging to his father-in-law under an arrangement that was made between appellee and his daughter, the wife of appellant, and which appellant understood required him to pay to appellee certain parts of the crops raised and certain cash each year, and by which arrangements appellant also understood the land was, upon the death of his father-in-law, to become the property of himself and his wife. The money and the share of the grain above mentioned were annually turned over by appellant to appellee in compliance with his supposed agreement, and the same was accepted from time to time by appellee without question or objection. The land, or at least a portion of it, was low, inclined to be wet and needed drainage. To improve the same in that respect appellant put in a large amount of tile, and paid for the construction of some open ditches, part of a combined drainage system. He also built about 1,000 rods of fence. All of these improvements were made by appellant with the knowledge and consent of appellee. About seven acres of the premises, which by the legal description appellant was supposed to be in possession of under the arrangement by which he occupied the

balance, was in fact outside of a supposed partition fence and was in the actual possession of neighbors and had not been in possession of either appellee or appellant for years, if ever. Appellant purchased the rights of the neighbors in possession of the 7 acres and took deeds therefor in his own name. He then took up the old fence that had separated it from the balance of the premises and built a new one further south so as to include this tract. There was also a 40-acre tract near by that appellant thought should belong to the premises in question. After some conference and negotiation appellee offered for the land within $200 of what the owner offered to sell it for, and appellant, without appellee's knowledge, put in the additional $200 and the premises were deeded to appellee. Fifty-four acres of the tract originally occupied by appellant under the arrangement spoken of, and on which appellant had built a house, two barns and a crib and on which he had made other lasting and valuable improvements, were deeded by appellee to the wife of appellant and the heirs of her body. This conveyance was made at a time when appellee, who is a very old man and wealthy, was making a partial distribution of his property among relatives. Thereafter appellant continued to occupy as before all of the premises he had formerly been in possession of, until the bishop and some preachers of the Amish Mennonite Church, of which both of these parties were members pretending to have power to expel appellant from that church, did pretend to expel him. Shortly thereafter, appellee notified appellant to leave the land and assign as a cause that the rules of the church compel its members to discontinue all relations with an expelled member. He refused to vacate the premises and suit was brought for possession. He thereupon undertook to have the church authorities settle the difference between him and his father-in-law, but the only thing he accomplished by it was to get in default in the suit

for possession and was dispossessed of the same.

This bill in equity was filed by appellant to compel the father-in-law to account to him for the moneys expended and the improvements made on the premises he occupied during the 17 years preceding his expulsion therefrom, except the 54 acres theretofore deeded to his wife by her father, and to pay back to him the money paid in the purchase of the outstanding claim of title the neighbors had in the 7 acres that lay south of the old supposed line fence and the $200 he paid on the consideration of the 40 acres purchased, reference to which has already been made.

There is no theory on which the money paid out on these last two items can be recovered from appellee. As to the 7-acre tract, appellant took the title he purchased, whatever it amounted to, in his own name. There is nothing to indicate that the money paid out by him in that transaction was intended for the benefit of appellee, or that it so resulted. For all that appears in this record, appellee may have absolute title to that 7 acres and be able to obtain its possession by law; as to that we express no opinion, but no equitable right to relief in regard to that land is shown by the bill or the evidence in this case.

As to the $200 paid on the consideration for the 40 acres of land purchased, that was nothing more or less than an executed gift to appellee and cannot be recovered.

As to the items for fencing, tiling and draining the premises of which appellant has now been dispossessed, the situation is different. As to those matters, the evidence shows that appellee not only had the full benefit of all the money so expended in the greatly enhanced value of the land, but that he knew all about it when the improvements were being made, and when the money was being expended, and made no objection to it   The proof further shows that appellant made those improvements with the expectation, as appellee

knew, that the land would one day be deeded to himself and wife. Under such a state of facts, while the evidence might not warrant a decree for specific performance, it is ample to show that it would be inequitable and unjust to permit appellee to become enriched at the expense of his son-in-law. In such a case equity will require an accounting. *Ransom v. Ransom,* 233 Ill. 369; *Worth v. Worth,* 84 Ill. 442; *King's Heirs v. Thompson,* 9 Pet. (U. S.) 204, 9 L. Ed. 102; *Mechanics' Sav. Bank & Trust Co. v. Scoggin,* 52 S. W. (Tenn.) 718.

Appellee insists that the testimony of appellant that his wife after a conference with her father returned to him and told him in substance that her father had agreed that if they, appellant and his wife, would go into possession of the farm in question and make certain improvements then in the end they could have the farm, was incompetent. The point is not well taken. It would not be competent for the purpose of establishing the fact that a contract had been entered into between appellee and appellant's wife, acting for him as well as for herself, but is competent as tending to show what appellant's *belief* was when he made the improvements as to who was to be benefited thereby, and when considered in connection with the long-continued occupancy of the premises by appellant and his wife upon the terms upon which the wife told appellant her father had agreed that they might occupy the same, and the further fact that appellee made statements at different times which, if not open admissions of the existence of the agreement, were at the least strongly suggestive of the fact that such a contract existed, together with the additional fact that appellant was not dispossessed until appellee conceived himself forced to do so by the rules of his church, is convincing to the point of conclusiveness that the improvements were in fact made by appellant while laboring under the belief claimed by him.

The decree of the Circuit Court is reversed and the cause is remanded to that court with directions to refer the cause to the master in chancery to state an account of all expenditures of time and money made by appellant in making lasting improvements on all of the premises of appellee, except the 54 acres deeded by appellee to the wife of appellant and the heirs of her body, and the 7-acre tract above mentioned, and when the said master shall have reported such an account, to then decree that appellee pay to appellant the amount, if any so found due, and to further decree the same to be a lien upon the premises in question.

*Reversed and remanded with directions.*