Amelia Frederick Wolf, complainant,

*v.*

Palisades Trust and Guaranty Company, executor and trustee under the last will and testament of Charles L. E. Wolf, deceased, et al., defendants.

[Decided February 23d, 1937.]

*Messrs. Hart & Hart,* for the complainant.

*Mr. Warren Dixon, Jr.,* for the defendants.

Lewis, V. C.

The bill of complaint is to set aside a conveyance of land on the ground that its grantor, complainant herein, did not understand the nature of the transaction, was unduly influenced, was not afforded the benefit of competent, independent advice, and did not receive a reconveyance of the property, contrary to the grantee's promise to reconvey it to her.

Complainant, ever since 1916, held title to a tract of land

and a dwelling house thereon located in the city of Englewood. In January, 1933, she conveyed this property to her husband, who died in November, 1934, leaving her, his three children by a former marriage, and a last will and testament, since duly admitted to probate, under which he appointed the defendant bank as executor.

Testator, at and prior to his death, was afflicted with a valvular heart lesion, high blood pressure, shortness of breath, and a chronic arthritis. These ailments so incapacitated him that he, at first, was unable to even get about his home without the aid of a cane, and then, as his afflictions grew worse, without the aid of a pair of crutches. Complainant, too, however, was not without physical infirmities. She, according to the testimony of her personal physician, was a sufferer from advanced progressive arthritis deformans, anaemia and general physical weakness.

Apprehensive of their respective infirmities in view of their ages—he then being about seventy years and she about fifty-six years—testator in December, 1932, sent for his attorney and, in complainant's presence, discussed with him his desire to make provision for her during her life; to have his entire estate upon her decease pass to his children; to have her relinquish her dower rights and reconvey to him the property in question, title to which he had taken in her name; and, in exchange, to provide her with an annuity commencing on and from his decease and continuing for the remainder of her life. She heard, discussed, approved and finally accepted all of his thus expressed wishes and plans, and thereafter agreed with him upon the sum of $2,000 as the amount of the annuity, which he was to provide for her; representing, as it did, the probable income from his entire estate. To effectuate these arrangements, the attorney thereupon departed from their home, drew the deed, the release of dower and the will, with all of which documents he and his secretary returned to that home on January 9th, 1933, when and where, after he had explained their contents and effect, complainant, simultaneously with testator's execution of his will, signed and acknowledged the said deed and release before him.

That she was a sick person when she executed the deed is not to be denied, but that she did not understand or was mentally incapable of comprehending the nature of the transaction in which she was then engaged is far from being established. In conveying the property and releasing her dower rights in exchange for her husband's providing her with a $2,000 annuity, to be made not only out of the income of his estate, but, if necessary, out of the *corpus* as well, complainant displayed a keen perception and excellent judgment. This is strikingly demonstrated by the fact that the net income from his entire estate, inclusive of the property in question, was but the sum of $1,418.90 for the entire year 1935; whereas as an annuitant she had a first charge or claim upon the entire estate, income as well as *corpus,* for the amount of her said annuity. In support of her now asserted claim that the instruments were not explained to nor was their nature or effect understood by her, we have but the word of herself, which, however, in the face of the credible testimony of that attorney and his secretary to the contrary, is not at all impressive or persuasive.

There is no proof that complainant then, or ever, was afflicted with any psychosis, nor are there any circumstances from which mental incompetency can be fairly deducted. It is significant, indeed, that her own personal physician—manifestly called for the purpose of establishing her incompetency—would go no further in that direction than to characterize her as being "generally weak, physically and mentally." Even that characterization, aside from its extreme vagueness and indefiniteness, falls far short of saying that she was mentally incompetent or that her mental weakness, if any she had, was of such a nature as to leave her with insufficient mind to understand in a reasonable manner the nature and effect of the act that she was then engaged in. *Wilkinson* v. *Sherman, 45 N. J. Eq. 413; Hill's Executors* v. *Day, 34 N. J. Eq. 150; Davren* v. *While, 42 N. J. Eq. 569; Kern* v. *Kern, 51 N. J. Eq. 574; McCambridge* v. *Daly, 109 N. J. Eq. 43.*

Clearly, the evidence adduced justifies no conclusion other than that the now challenged instruments were fully explained

to her and that she fully understood the nature of the transaction in which she was then engaged.

Nor does the evidence justify or sustain complainant's charge of undue influence on the part of her husband in the procurement of the now questioned conveyance. While it is true that one may be possessed of sufficient mentality to understand the nature of the transaction in which he is engaged, and still be so mentally impaired as to be unable to resist or guard against unfair importunity, wile or craft (*Wilkinson* v. *Sherman, supra*), nevertheless it has been here neither claimed nor shown that testator wielded any dominance over, in anywise beguiled or took any unfair advantage of complainant. On the contrary, I find that their dealings were on terms of equality; that he was not shown to have possessed any greater strength of mind than she, nor to have exerted any dominating influence over her; nor can I find that she, because of any alleged, but not established, weakness, dependence or trust reposed, was unfairly taken advantage of. *Cowee* v. *Cornell, 75 N. Y. 91; 31 Am. Rep. 428; Slack* v. *Rees, 66 N. J. Eq. 447; 69 L. R. A. 393.*

Critically viewed, the entire transaction fails to reveal anything inherent therein suggestive of any unfairness practiced upon or advantage taken of her, or from which it may be fairly inferred that her free agency was destroyed or that she was constrained to act against her will. The conviction is rather inevitable that in doing what she did, complainant was impelled by no extraneous influence but solely by her own natural desire and impulse to promote her own interests and personal welfare. It is only that sort of influence that destroys free agency and constrains one to do what is against his will and what he would not otherwise have done, which has not been shown here, that the law frowns upon and condemns. *Earle* v. *Norfolk and New Brunswick Hosiery Co., 36 N. J. Eq. 188; affirmed, 37 N. J. Eq. 315; Stoutenburgh* v. *Hopkins, 43 N. J. Eq. 577; Wilkinson* v. *Sherman, supra; White* v. *Starr, 47 N. J. Eq. 244; Mott* v. *Mott, 49 N. J. Eq. 192.*

Complainant claims that the burden of proving that she had the benefit of competent, independent advice rests upon

the defendants. This is vigorously resisted by defendants who contend that it is only in those instances where the challenged conveyance is a gift, that the burden of so doing is cast upon the recipient, citing *Baur* v. *Cron, 71 N. J. Eq. 743; Buchanan* v. *Buchanan, 73 N. J. Eq. 544* (reversed on other grounds, *75 N. J. Eq. 274*) ; *Post* v. *Hagan, 71 N. J. Eq. 234; Pearce* v. *Stines, 79 N. J. Eq. 51; Hunt* v. *Naylor, 84 N. J. Eq. 646; Reeves* v. *White, 84 N. J. Eq. 661; Jacobus* v. *Waits, 86 N. J. Eq. 148; Vass* v. *Werner, 92 N. J. Eq. 294; Siebold* v. *Zieboldt, 93 N. J. Eq. 327; McCully* v. *Rowland, 94 N. J. Eq. 57; Giuditta* v. *Bonacci, 95 N. J. Eq. 147; Graziano* v. *Lanuto, 97 N. J. Eq. 182; Roosma* v. *Roosma, 100 N. J. Eq. 61; Lambiase* v. *Lambiase, 101 N. J. Eq. 99; Kelly* v. *Kelly, 107 N. J. Eq. 483; Christian* v. *Canfield, 108 N. J. Eq. 547; McCambridge* v. *Daly, supra; Dyer* v. *Smith, 112 N. J. Eq. 126.*

While it is true that in the great majority of cases, among which are to be found those above cited, in which the rule appertaining to competent, independent advice has been invoked, the transfers sought to be set aside were gifts; nevertheless none of those cases has held, and I am unwilling to now hold, that the applicability or inapplicability of the rule is dependent solely upon whether the questioned transaction was a gift. I am rather inclined to the view that the rule applies to all transactions, be they gifts or otherwise, in which a dominant confidential relationship is shown to have existed between the parties and a resultant benefit or advantage to have accrued to the dominant fiduciary. *Soper* v. *Cisco, 85 N. J. Eq. 165.*

However, it is incumbent upon a transferrer seeking the benefit of that rule to first establish the existence of such a relationship and the subordinate position of himself. *James* v. *Aller, 68 N. J. Eq. 666; Fretz* v. *Roth, 70 N. J. Eq. 764; Kelso* v. *Kelso, 96 N. J. Eq. 354.* This the complainant failed to do; and hence, is unable to invoke the rule. Moreover, as was hereinbefore indicated, the evidence negatives the existence of any alleged dominance on the part of the testator and clearly demonstrates the absolute fairness of

the entire transaction which appears to have been well understood by complainant and engaged in of her own free will. Considering the cost of the maintenance and the inadequate rental yield of the premises, as well as the amount of the annuity and complainant's expectancy of life, the entire transaction, to say the least, was eminently fair to her.

There still remains to be considered complainant's claim that the testator failed to reconvey the property to her contrary to his alleged oral promise to do so. Parol agreements of this type, especially when called into controversy only after death has intervened and forever silenced the alleged promisor, should be subjected to close scrutiny and permitted to stand only if and when established by evidence that is clear, cogent and convincing. *McTague* v. *Finnegan, 54 N. J. Eq. 454; affirmed, 55 N. J. Eq. 588;* *McNamara* v. *Bohn, 108 Atl. Rep. 764;* *Johnson* v. *Wehrle, 9 N. J. Mis. R. 939; 156 Atl. Rep. 229;* *Hamlin* v. *Stevens, 177 N. Y. 39; 69 N. E. Rep. 118;* *Rosseau* v. *Rouss, 180 N. Y. 116; 72 N. E. Rep. 916;* *Roberge* v. *Bonner, 185 N. Y. 265; 77 N. E. Rep. 1023;* *Holl* v. *Tuite, 168 N. Y. 17; 80 N. E. 364;* *Ranson* v. *Ranson, 233 Ill. 369; 84 N. E. Rep. 210;* *Spencer* v. *Spencer, 26 R. I. 237; 58 Atl. Rep. 766.* Were the rule otherwise, unlimited opportunity, with but slight risk of detection, would be afforded to unscrupulous persons for the perpetration of a fraud and a wrongful diversion of a deceased person's property and estate.

Complainant testified that she conveyed the property to her husband upon his express promise to reconvey it to her; he having informed her that he merely wanted it for use as collateral security. Her maid testified that she on several occasions heard him admit that he only "borrowed the property and would give it back." This, however, is wholly inconsistent and irreconcilable with the testimony of the attorney and his secretary, both of whom testified that the conveyance was made in accordance with her arrangement with her husband whereby she, in return for said property and the release of her dower rights, was to receive the $2,000 annuity which he provided for her under his will. In the

face of their plausible testimony, I am constrained to hold that complainant's proof falls far short of being clear, cogent and convincing. This conclusion renders unnecessary any consideration of the question whether the alleged oral promise of the testator, even if it had been satisfactorily established, would, under section 3 and/or section 3, subdivision 3, of the statute of frauds (*2 Comp. Stat. pp. 2611, 2612*) be here effective and enforceable.

Defendants are entitled to a decree dismissing the bill of complaint.